**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS –
CENTRAL DIVISION**

| | | |
|---|---|---|
| JANE DOE and SALLY DOE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **CASE NO. 4:24-CV-339-LPR** |
| | ) | |
| DARDANELLE SCHOOL DISTRICT, | ) | **12-PERSON JURY DEMAND** |
| ARTHUR J. GALLAGHER & CO., - | ) | |
| LITTLE ROCK, ROLANDO VALLS, | ) | |
| individually and in his Official Capacity | ) | |
| as coach and teacher, DIANE THOMAS, | ) | |
| individually and in her Official Capacity | ) | |
| as principal, ESTATE OF BJ | ) | |
| CHANDLER, individually and in his | ) | |
| Official Capacity, MARK GOTCHER, | | |
| in his Official Capacity, and JOHN | | |
| DOES 1-10, | | |
| | | |
| Defendants. | | |

---

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS**

---

In response to Separate Defendant Rolando Valls' Motion to Dismiss Plaintiffs' Amended

Complaint (Dkt. 4) and Defendants Dardanelle School District, Rolando Valls, in his official

capacity, Diane Thomas, and Mark Gotcher's Motion to Dismiss (Dkt. 7), Plaintiffs Jane and Sally

Doe submit the following:

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.   STANDARD OF REVIEW ................................................................................. 2

III.  ARGUMENT ....................................................................................................... 2

   A.  **The Motions Should Be Stayed Pending Appeal, or Certify the Question for the Arkansas Supreme Court.** ................................................................................. 2

   B.  **Plaintiffs' Claims are Timely Under Arkansas Law Because the Justice for Victims Act is Constitutional.** ................................................................................. 3

      1.  Arkansas Statutes Are Presumed Constitutional and the U.S. Supreme Court Has Long Recognized that a Legislature May Extend Otherwise Time-Barred Claims. ................ 4

      2.  The Justice for Victims Act is Constitutional Under a Vested Rights Analysis. ............ 5

         (a)  The Vested Rights Concept is Not Absolute. ........................................................... 5

         (b)  The Justice for Victims Act Survives the *Aderhold* and *Walters* Analysis. ......... 10

      3.  The Justice for Victims Act is Constitutionally Valid When Analyzed Under a Substantive Due Process Analysis. ................................................................................. 14

   C.  **The Justice for Victims Act Applies and *Revives* the Statute of Limitations for Plaintiffs' Title IX and § 1983 Claims.** ................................................................. 18

      1.  When a Federal Statute "Borrows" a State's Statute of Limitations, it Must Also Borrow that State's Revival Provisions. ......................................................................... 18

         (a)  *Owens* and *Wilson* Must Be Considered In Light of its Predecessors. ................. 19

         (b)  Non-precedential *Kane* Failed to Properly Apply *Tomanio*, *Hardin*, and *Johnson v. Railway.* ........................................................................................................... 24

      2.  In the Alternative, the Three-Year Statute of Limitations, When Applied to Title IX Claims Arising out of Child Sexual Abuse, is Inconsistent with the Constitution and Laws of the United States. ............................................................................................. 28

IV.   CONCLUSION ................................................................................................... 28

# I.   **INTRODUCTION**

Plaintiffs Jane and Sally Doe were middle school students when they became victims of child sexual abuse by their teacher, Rolando "Nicky" Valls, in or around 1983. Throughout the years, Plaintiffs continued to discover the stifling injuries that resulted from the abuse they experienced by an authority figure at such a delicate age. Plaintiffs also discovered on social media decades later that other female minors had alleged that they had experienced similar abuse at the hands of Defendant Valls as their teacher. After learning this, Plaintiffs wanted to stand up on behalf of their former selves and for Defendant Valls' other victims to hold their abuser and the system that enabled it accountable. The Arkansas' Justice for Vulnerable Victims of Sexual Abuse Act, which was first enacted in 2021 and amended and extended in 2023, enabled Plaintiffs to do just that. Ark. Code Ann. § 16-118-118 (hereinafter, the "Justice for Victims Act").

For a limited time, the Justice for Victims Act revives civil actions for child sexual abuse claims that were otherwise time barred by a statute of limitations. Victims of child sexual abuse now have until January 31, 2026, to bring their claims. Ark. Code Ann. § 16-118-118(b). At least twenty-five (25) states to date have passed and upheld similar revival statutes across the country.[1]

Each Defendant seeks to dismiss this Action, alleging that the Justice for Victims Act is unconstitutional.[2] Defendants Dardanelle School District, Rolando Valls, in his official capacity,

---

[1] Including Arizona, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New York, North Carolina, Oregon, Rhode Island, Utah, Vermont, and West Virginia. *See Revival Laws for Child Sexual Abuse*, CHILD USA, https://childusa.org/wp-content/uploads/2023/05/US-WindowsRevival-Laws-for-CSA-Since-2002-5.1.23.pdf (last visited May 15, 2024).

[2] The Court should be aware that this very question concerning the constitutionality of the Arkansas Justice for Vulnerable Victims of Sexual Abuse Act is currently on appeal before the Arkansas Supreme Court, Case No. CV-23-328. Given this, the Court should stay any ruling pending the Supreme Court's decision. Alternatively, the Court could certify the question to the Arkansas Supreme Court as allowed by Ark. R. Sup. Ct. 6-8. If certified, the Court might also ask

Diane Thomas, and Mark Gotcher (hereinafter, the "Institutional Defendants") additionally argue the Justice for Victims Act cannot revive the statute of limitations for Title IX and § 1983 claims. Because the authority Defendants rely upon do not hold water as applied to this case, the Motions to Dismiss must be denied.

## II.    STANDARD OF REVIEW

A complaint should survive a motion to dismiss when it contains sufficient factual matter to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In ruling on a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the nonmoving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012). In a diversity suit, the district court applies "federal pleading standards . . . to the state substantive law to determine if a complaint makes out a claim under state law." *Karnatcheva v. JPMorgan Chase Bank, N.A.,* 704 F.3d 545, 548 (8th Cir. 2013).

## III.    ARGUMENT

### A.    The Motions Should Be Stayed Pending Appeal, or Certify the Question for the Arkansas Supreme Court.

This exact question involving the constitutionality of the Justice for Vulnerable Victims of Sexual Abuse Act ("Justice for Victims Act") is currently before the Arkansas Supreme Court in *HC, et al. v. James Nesmith*, CV-23-328. Therefore, the Court should stay any ruling pending the Supreme Court's decision. Alternatively, the Court could certify the question to the Arkansas

---

that the question be consolidated with the case already on appeal. Either way, the Court avoids the necessity of ruling on an uncertain question of Arkansas law involving the validity of an act of the Arkansas General Assembly.

Supreme Court as allowed by Ark. R. Sup. Ct. 6-8. If certified, the Court might also ask that the question be consolidated with the case already on appeal. Either way, the Court avoids issuing a holding on an uncertain question of Arkansas law involving the validity of an act of the Arkansas General Assembly.

Furthermore, it appears Defendant Rolando Valls in his individual capacity failed to comply with Arkansas Code § 16-111-111(a), which requires any party challenging the constitutionality of an Arkansas statute to serve notice upon the Arkansas Attorney General so that the state is afforded an opportunity to be heard. *See* Ark. Code § 16-111-111(a). Defendant Vall's failure to provide the state of Arkansas an opportunity to weigh in should be fatal to its Motion, since the failure would require this Court to rule without having heard from all interested parties.

**B.    Plaintiffs' Claims are Timely Under Arkansas Law Because the Justice for Victims Act is Constitutional.**

Plaintiffs' claims are timely pursuant to the Arkansas' Justice for Vulnerable Victims of Sexual Abuse Act, which allows victims of child sexual abuse to initiate a civil action by January 31, 2026. Ark. Code Ann. § 16-118-118 (hereinafter the "Justice for Victims Act"). In arguing that Plaintiffs' claims are untimely because the Justice for Victims Act is unconstitutional, both Motions contend that the Arkansas Supreme Court has consistently and absolutely held that the Arkansas legislature cannot revive a statute of limitations. However, Defendants oversimplify the case holdings on a very complex legal issue and overlook the required analysis in making a constitutionality determination on this issue. When properly applying and analyzing relevant precedent, the Justice for Victims Act' is constitutional, both under a vested rights analysis and substantive due process analysis.

1.      **Arkansas Statutes Are Presumed Constitutional and the U.S. Supreme Court Has Long Recognized that a Legislature May Extend Otherwise Time-Barred Claims.**

First and foremost, Arkansas statutes carry "a strong presumption of constitutionality." *Alpe v. Fed. Nat'l Mortg. Ass'n*, 2023 Ark. 58, 2 (Ark. 2023). Before an act will be held unconstitutional, the incompatibility between the statute and the constitution must be clear. *Whorton v. Dixon*, 363 Ark. 330, 336, 214 S.W.3d 225, 230 (2005). Any doubt as to the constitutionality of a statute **must** be resolved in favor of its constitutionality. *Id.* In other words, where possible the Arkansas Supreme Court will construe a statute such that it is constitutional. *Alpe v. Fed. Nat'l Mortg. Ass'n*, 2023 Ark. 58, 2 (Ark. 2023) (citing *Shipp v. Franklin*, 258 S.W.3d 744, 747 (Ark. 2007).

Importantly, it has been U.S. law for more than a century that a state legislature may extend or repeal a statute of limitation, **even after the cause of action has been barred,** so long as it does not involve title to property**.** *Campbell v. Holt*, 115 U.S. 620 (1885). That is because a statute of limitation is a "matter[] of remedy" that represents a "public policy about the privilege to litigate." *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314 (1945) (affirming *Cambell v. Holt*). The US Supreme Court states that a statute of limitations is **not**, as Defendants argue, a "vested right in immunity from suit." *Id.* at 312, n.8. Although Arkansas has diverted from the logic and holdings of *Campbell* in some situations, as in *Johnson v. Lilly*, 823 S.W.2d 883 (Ark. 1992), the holdings of those cases should not be applied absolutely, as explained further herein.

Moreover, even Arkansas recognizes that when it comes to the timeframe a claimant must bring an action, it is a "matter of public policy," a determination "which lies almost exclusively in the legislative domain." *See Davis v. Parham*, 362 Ark. 352, 364, 366-67 (Ark. 2005). It is the Arkansas General Assembly's "prerogative" and should "not be interfered with by the courts in the absence of palpable error in the exercise of the legislative judgment." *Id.*

4

2.    **The Justice for Victims Act is Constitutional Under a Vested Rights Analysis.**

(a) **_The Vested Rights Concept is Not Absolute._**

Defendants argue they have a "vested right" to rely on the statute of limitations as a defense, and that the Arkansas General Assembly does not have the constitutional power to divest them of that right and revive time-barred causes of action. (Dkt. 5, 6; Dkt. 8, 4). Defendants rely upon *Johnson, Hall, Green*, and *Miller* in support of their arguments. *Johnson v. Lilly*, 823 S.W.2d 883, 884 (Ark. 1992); *Hall* v. *Summit Contractors, Inc.,* 158 S.W.3d 185, 188 (Ark. 2004); *Green v. Bell,* 826 S.W.2d 226, 229, n.l (Ark. 1992); *Miller v. Subiaco Academy*,386 F.Supp.2d 1025 (W.D. Ark. 2005). In reliance on these cases, Defendants argue that because Plaintiffs' causes of action were already time-barred when the Justice for Victims Act was passed, application of it to this case is constitutionally invalid. But this argument takes the cases they rely upon too far because those cases are not constitutionally based, they are not absolute in their holdings, and each can be distinguished from the statute at issue.

First, *Johnson* and *Green* invalidated a retroactive extension of the statute of limitations for claims related to a contractual obligation—specifically, debt or money owed from child support arrearages. Here, claims arising from child sexual abuse are distinct from claims arising from debts owed. In support of its decision that a statute of limitations for child support arrearages could not be expanded and revive otherwise barred claims, *Johnson* makes the sweeping statement that Arkansas has "long taken the view . . . that the legislature cannot expand a statute of limitation so as to revive a cause of action already barred." *Johnson v. Lilly*, 308 Ark. 201, 203, 823 S.W.2d 883 (Ark. 1992). However, this statement must be taken lightly because the cited cases do not support this sweeping proposition.

The two cases *Johnson* cites in support of its sweeping statement that the "legislature cannot expand a statute of limitation so as to revive a cause of action already barred" are: *Rhodes v. Cannon*, 164 S.W. 752, 112 Ark. 6 (Ark. 1914) (analyzing whether a law expanding time to enforce or foreclose on a mortgage or deed of trust *retroactively* applied); *Couch v. McKee*, 6 Ark. 484 (1845)[3] (analyzing whether a newly enacted statute of limitations could *retroactively* revive a claim for a promissory note for the sale of a slave). *Johnson*, 308 Ark. at 203. Similar to *Johnson*, both *Rhodes* and *Couch* involved statutes of limitations related to claims arising from contractual obligations. *Id*. But even more importantly, the at-issue statutes of limitations in *Rhodes* and *Couch* **did not** explicitly "revive" otherwise time-barred claims as the Justice for Victims Act does. *Id*.

The question in *Rhodes* and *Couch*, rather, was whether a newly expanded statute of limitations could *retroactively* be applied to extend an otherwise time-barred action involving contractual obligations **when the statute did not explicitly say so**. *Couch*, 6 Ark. at 493 ("It is clear *from the language* employed by the legislature in the act under consideration, that it was intended that its operation should be *prospective*; that it was intended to apply to causes of action thereafter accruing, and not to those already barred by the laws then in force."); *Rhodes*, 164 S.W. 752 ("There is nothing *in the language* of the amendment of May 10, 1911, which makes it clear and certain that it refers to claims already barred by the statute of nonclaim."). In other words, the legislature perhaps *could* have revived old claims, but it chose not to do so.

Similarly, the question at issue in *Hall* was completely different than the question before the Court today. In *Hall*, a plaintiff's claim was time-barred because an Arkansas statute required application of Tennessee's one-year statute of limitations to plaintiff's claims (rather than

---

[3] Plaintiffs had a hard time finding both *Rhodes* and *Couch*. For the Court's convenience, Plaintiffs are attaching both hereto.

Arkansas' three-year statute of limitations), as the claim was substantially based in Tennessee. *Hall*, 356 Ark. at 613. *After* that one-year statute of limitations had already expired, the Arkansas Legislature repealed the statute requiring application of the Tennessee statute of limitations. *Id.* at 613-14. The Court noted that it was of no consequence that the Arkansas legislature later repealed that statute, because the statute was still in effect at the time of the injury. *Id.* The real holding of *Hall* was that because the plaintiffs' claim was substantially based on Tennessee law, the Tennessee statute of limitations applied. *Id.* at 614-15. Most importantly, *Hall* **did not consider a revival statute**. The question of whether a later repeal of a law can retroactively be applied to revive a claim—especially where the statute does not explicitly say so—is an entirely different question.

Contrary to Defendant Vall's position, and for similar reasons listed above, *Miller v. Subiaco Academy*, is also of no consequence because the court was considering whether a statute of limitations could be *retroactively* applied to revive a claim **when the statute of limitations at-issue did not explicitly say so**. 386 F. Supp. 2d 1025 (W.D. Ark. 2005).

*Johnson*, *Green*, *Miller*, and *Hall's* analyses are also not grounded in any constitutional provision. Neither *Johnson*, nor any of the cases after it, identify a constitutional provision that is violated by an act of the legislature that revives a time-barred cause of action. In fact, *Johnson* acknowledges that no offense to the federal constitution is committed by any such act outside of very limited circumstances involving title to property: "The Supreme Court of the United States has held that in all cases except those involving title to property a legislature can, consistent with the Fourteenth Amendment, extend or repeal a statute of limitation, even after the cause of action has been barred. *Johnson*, 308 Ark. at 203, 823 S.W.2d at 885 (referring to *Chase Sec. Corp. v. Donaldson,* 325 U.S. 304 (1945) and *Campbell v. Holt*, 115 U.S. 620 (1885))." Importantly,

*Johnson* and the other cases Defendants rely upon do not mention a provision of the Arkansas constitution that was violated.

Finally, any reading any reading of the "vested right" concept as absolute—whereby *any* act of the legislature that disturbs a vested right is invalid—is wrong, even if the Act does so by retroactive application of that new law. As early as 1981, the Arkansas Supreme Court recognized that "the doctrine of vested rights is not the only determinative factor and is not always followed in deciding whether to apply a law retroactively." *Forrest City Machine Works, Inc. v. Aderhold*, 616 S.W.2d 720, 725 (Ark. 1981). Quoting from Smith, *Retroactive Laws and Vested Rights*, 5 Tex. L. Rev. 237 (1927) and 6 Tex. L. Rev. 409 (1928), the Court described this notable example of valid application of a retroactive law that disturbed vested rights:

> . . what of a law that, by legitimizing an illegitimate child, takes property from an heir who before the law had a perfect title in every respect and for all purposes, and gives it to a remote purchaser from the illegitimate? If the term "vested" means anything at all, some of these laws certainly take away vested rights, and yet such laws have been sustained. It is submitted that the distinction between vested and non-vested rights, like that between rights and remedies, or between jurisdictional and non-jurisdictional defects in legal proceedings, is of use primarily as a basis on which to classify decisions after they have already been reached on other grounds.

*Aderhold*, 616 S.W.2d at 725 (cleaned up).

The concept of vested rights, rather than being one of absolutes is, like many things in the law, subject to exceptions when the reasons for the exceptions are weighty enough. "Courts have traditionally applied laws retroactively when they deem it just for ***'courts do not regard rights vested contrary to the equity and justice of the case.'*** *State* v. *Newark*, 30 Dutch 185 (New Jersey 1858). This brings us to one of the deciding factors in the retroactive application of laws—public policy." *Aderhold*, 616 S.W.2d at 725 (emphasis added). In other words, the vested-rights concept must bow to "equity and justice" when so dictated by public policy.

*Ark. Dept. of Human Servs. Div. of Economic & Med. Servs. v. Walters*, elaborated on this equity-and-justice-dictated-by-public-policy exception to validate retroactive application of an act of the legislature that deprived the settlor of a trust of the benefit of the trust she created. 866 S.W.2d 823 (Ark. 1993). Lillian Walters created a trust that would make her artificially impoverished and therefore eligible for Medicaid in the event she ever entered a nursing home. The idea behind the trust was to preserve her assets for her heirs and have Medicaid carry the expense of nursing home care. Walters subsequently entered a nursing home, applied for Medicaid, and was approved. Later, though, the Department of Human Services learned of the trust and revoked her Medicaid eligibility. Walters appealed DHS's decision to the circuit court, which reversed the decision. Then, in the interim between the circuit court's ruling and the decision on DHS's appeal of it, the legislature passed a statute invalidating as against public policy trusts like the one Walters created. A primary question on appeal was could that act be applied retroactively to invalidate Walters' trust and the benefits to which it entitled her? The Court held that it could.

*Walters'* result is not as important for this case as is the analytical path it used to reach it. That path, with its genesis in *Aderhold*, weighs the equity and fairness of the act as dictated by the public policy behind it to determine if retroactive application will stand. In *Aderhold*,

> We held that we would determine retroactivity and vested rights ***after weighing the fairness of the act and the general welfare***. We stated that courts do not regard rights vested contrary to the equity and justice of the case and that one of the principal factors in determining the retroactive application of an act is the public policy set out in the act. [*Aderhold*, 273 Ark.]. at 42, 616 S.W.2d at 725. ***If the public policy set out in the act offends our sense of justice, we will not apply it retroactively, but if it does not offend our sense of justice, we can apply it retroactively.***

*Walters*, 866 S.W.2d at 826 (emphasis added).

This language cannot be squared with the notion that the vested-rights concept is an absolute. Even acts of the legislature that touch on vested rights, including those that revive causes of action, may be valid if the public policy underlying them is weighty enough. Cases like *Johnson* and its progeny must be considered alongside *Aderhold* and *Walters* for the analysis to be complete.

### (b)  The Justice for Victims Act Survives the Aderhold and Walters Analysis.

So, to determine if the Act here may validly revive causes of action for childhood sexual abuse, the Court must weigh "the fairness of the act and the general welfare." *Ibid*. If in doing so, the "public policy set out in the act" does not "offend" the court's "sense of justice," it can be applied retroactively to revive barred causes of action. *Ibid*.

The Justice for Victims Act's three-fold public policy is obvious and compelling. Reviving expired claims of child sexual abuse advances the state's interest in protecting children by (1) identifying hidden child predators who endanger children; (2) shifting the cost of abuse from victims and taxpayers to the abusers themselves; and (3) educating the public about the prevalence, signs, and impact of child sexual abuse so that it can be better prevented in the future.

First, the revival window facilitates the identification of previously unknown child predators[4] who would otherwise not be identified. Through the Act, the State empowered victims to identify Arkansas' hidden child predators so they can be held accountable, allowing the public to develop policies to prevent further abuse in the long-term.[5]

---

[4] Michelle Elliott et al., *Child Sexual Abuse Prevention: What Offenders Tell Us*, 19 CHILD ABUSE NEGL. 579 (1995) (70% of offenders sampled committed offenses against 1 to 9 victims, 23% committed offenses against 10 to 40 children, 7% committed offenses against 41 to 450 children).
[5] *See generally*, *Making the Case: Why Prevention Matters*, PREVENTCHILDABUSE.ORG (last visited February 22, 2022), https://preventchildabuse.org/resource/why-prevention-matters/; *Preventing Adverse Childhood Experiences*, CDC.GOV (last visited Feb. 23, 2022), https://www.cdc.gov/violenceprevention/pdf/preventingACES.pdf.

Second, the Justice for Victims Act educates the public about the dangers of child sexual abuse and prevention. When predators are exposed, particularly high-profile ones, the press publishes pieces that enlighten communities about methods child molesters use to assault children sexually and the institutional failures that enable their abuse. This connects the public with tools to identify abusers. Limitations reform not only provides access to justice previously withheld from survivors of child sexual abuse; it prevents further abuse by fostering social awareness while encouraging institutions to implement accountability and safe practices.

*Third*, the cost of child sexual abuse to survivors is colossal,[6] and they, along with taxpayers, unjustly carry the burden of this expense. The estimated lifetime cost to society of child sexual abuse cases occurring in the U.S. in 2015 is $9.3 billion, and the average cost of non-fatal per female victim was estimated at $282,734.[7] The negative effects over a survivor's lifetime generate costs that impact the nation's healthcare, education, criminal justice, and welfare systems. Revival cases that result in awards and settlements not only equitably shift some of the cost of abuse away from survivors, but also save the state money by reducing expenditures on these public services. It is impossible to deny that the Justice for Victims Act advances Arkansas' compelling interest in child protection. See, *e.g., McGuire v. State*, 706 S.W.2d 360, 361–362 (Ark. 1986).

The Justice for Victims Act's revival window accomplishes this policy narrowly with a fine scalpel rather than a broad sword. The initial burden to state a claim remains on the plaintiff,

---

[6] *See* M. Merricka., et al., *Unpacking the impact of adverse childhood experiences on adult mental health*, 69 CHILD ABUSE & NEGLECT 10 (July 2017); Angelakis, I., Gillespie, E.L., Panagioti, M., *Childhood maltreatment and adult suicidality: a comprehensive systematic review with meta-analysis*, PSYCHOLOGICAL MEDICINE 1-22 (2019); Gail Hornot, *Childhood Trauma Exposure & Toxic Stress: What the PNP Needs to Know*, J. PEDIATRIC HEALTHCARE (2015); Perryman Group, *Suffer the Little Children: An Assessment of the Economic Cost of Child Maltreatment*, (2014).
[7] Elizabeth J. Letourneau et al., *The Economic Burden of Child Sexual Abuse in the United States*, 79 CHILD ABUSE NEGL. 413 (2018).

it is restricted to instances of child sexual abuse, and it mandates that new actions be brought within a limited two-year timeframe. Ark. Code Ann. § 16-118-118(b)(2). It does not cast an overly broad net; *all* child sexual abusers should be brought to justice regardless of when the abuse occurred, consistent with the contemporary science on trauma and patterns of disclosure.

Child sexual abuse is a national public health crisis, with 3.7 million children sexually abused every year.[8] In the United States, ***as many as one in five girls and one in 13 boys*** is sexually abused before they turn eighteen.[9]

Extensive research shows the unique trauma suffered by childhood sexual abuse victims distinguishes them from victims of other crimes in how they respond to their victimization. Victims of child sexual abuse commonly keep the fact of their victimization and their suffering secret for decades. As children, child sexual abuse victims often fear the negative repercussions of disclosure, such as disruptions in family stability, loss of relationships, or involvement with the authorities.[10] These victims may also struggle to disclose their experiences due to trauma-related psychological barriers such as shame, self-blame, depression, or fear, as well as social factors such as gender-based stereotypes or stigma regarding victimization.[11]

---

[8]    *Preventing Child Sexual Abuse*, CDC.gov (last visited Feb. 22, 2022), https://www.cdc.gov/violenceprevention/pdf/can/factsheetCSA508.pdf; *see also* D. Finkelhor, et. al., Prevalence of child exposure to violence, crime, and abuse: Results from the Nat'l Survey of Children's Exposure to Violence, 169(8) JAMA PEDIATRICS 746 (2015).

[9] G. Moody, et. al., Establishing the international prevalence of self-reported child maltreatment: a systematic review by maltreatment type and gender, 18(1164) BMC PUBLIC HEALTH (2018); M. Stoltenborgh, et. al., *A Global Perspective on Child Sexual Abuse: Meta-Analysis of Prevalence Around the World*, 16(2) CHILD MALTREATMENT 79 (2011); N. Pereda, et. al., The prevalence of child sexual abuse in community and student samples: A meta-analysis, 29 CLINICAL PSYCH. REV. 328, 334 (2009).

[10] Delphine Collin-Vézina et al., A Preliminary Mapping of Individual, Relational, and Social Factors that Impede Disclosure of Childhood Sexual Abuse, 43 CHILD ABUSE NEGL. 123 (2015).

[11] Ramona Alaggia et al., *Facilitators and Barriers to Child Sexual Abuse (CSA) Disclosures: A Research Update* (2000-2016), 20 TRAUMA VIOLENCE ABUSE 260, 279 (2019).

Additionally, disclosing sexual abuse to the authorities for criminal prosecution or an attorney for civil justice is a difficult and emotionally complex process, which involves the victim knowing they were abused; being willing to identify publicly as a sexual abuse victim; and deciding to act against their abuser. This last variable may be particularly difficult for victims, as nearly 90 percent of perpetrators are someone the child knows,[12] as is the case in the present matter. It is hardly surprising, then, that one study found 44.9 percent of male victims and 25.4 percent of female victims of child sex abuse delayed disclosure by more than 20 years. [13] In another study of victims of abuse in Boy Scouts of America, 51 percent of victims disclosed their abuse for the first time at age 50 or older. [14] An estimated 70 percent of child sexual assault victims never report abuse to the police.[15]

Nothing about the policy behind the Justice for Victims Act should offend the Court's sense of justice. In fact, the converse is true; any sense of justice should be offended by invalidating its application to cases like this one. Any attempt to invalidate the Justice for Victims Act should be rejected.

Importantly, validating the Justice for Victims Act on the reasoning set forth above does not require overturning any prior precedent or charting any new path. To the contrary, the analysis

---

[12] Sarah E. Ullman, *Relationship to Perpetrator, Disclosure, Social Reactions, and PTSD Symptoms in Child Sexual Abuse Survivors*, 16 J. CHILD SEX. ABUSE 19 (2007); David Finkelhor & Anne Shattuck, Characteristics of Crimes Against Juveniles, University of New Hampshire, Crimes Against Children Research Center (2012), available at http://www.unh.edu/ccrc/pdf/CV26_Revised%20Characteristics%20of%20Crimes%20against%20Juveniles_5-2-12.pdf.

[13] Patrick J. O'Leary & James Barber, *Gender Differences in Silencing following Childhood Sexual Abuse,* 17 J. CHILD SEX. ABUSE 133 (2008).

[14] *Delayed Disclosure of Child Sexual Abuse*, CHILD USA, https://childusa.org/wp-content/uploads/2020/03/delayed-disclosure-childUSA-1.jpg (last visited Mar. 8, 2022).

[15] D. Finkelhor et al., *Sexually Assaulted Children: National Estimates and Characteristics*, US Dept. of Justice, Office of Justice Programs (2008), https://www.ojp.gov/pdffiles1/ojjdp/214383.pdf.

above is driven by existing precedent. But the analysis applies all of the precedent, not just part of it. *Johnson*, its predecessors, and its progeny must be viewed along with *Aderhold* and *Walters*, not in isolation.

*Johnson* and its progeny can be distinguished as situations in which the public policy underlying the acts at issue were simply not weighty enough in terms of fairness and the general welfare to allow retroactive application and revival of barred causes of action. As weighty as holding those in arrears for child support accountable is, it pales in comparison to the weight of holding perpetrators of childhood sexual abuse accountable and providing a remedy for their victims. Validating the Justice for Victims Act as applied to these Defendants works no offense to *Johnson* and its progeny and the general concept that once a cause of action is barred it cannot be revived by subsequent legislation. It simply recognizes that, like most general concepts in the law, it must bow to fairness, equity, and the general welfare when the weight of public policy behind a narrow enactment like the Act is great enough.

Legislative acts in Arkansas are presumed constitutional. *Edwards v. Thomas*, 2021 Ark. 140, 4, 625 S.W.3d 226, 228. "An act should be struck down only when there is a clear incompatibility between the act and the constitution." *Ibid*. *Johnson* and its progeny are neither constitutionally based nor absolute; the Defendants' vested-rights analysis is not grounded in any provision of the Arkansas constitution. There is no clear incompatibility. As such, the Act is valid and applicable under existing precedent.

3.    **The Justice for Victims Act is Constitutionally Valid When Analyzed Under a Substantive Due Process Analysis.**

Validating the Justice for Victims Act on the reasoning set forth above does not require overturning any prior precedent or charting any new path. Rather, the Act is valid under existing precedent. Nevertheless, were Arkansas to overturn its existing vested-rights analysis and follow

14

the modern trend[16] of utilizing a substantive-due-process analysis, in place of a vested-rights analysis, the Justice for Victims Act survives.

Consistent with the due-process analysis established by the United States Supreme Court in *Landgraf v. USI Film Products*, the Act's revival provisions are constitutional and subject only to rational-basis review. 511 U.S. 244, 267 (1994). Even if there was a fundamental right to a limitations defense such that the revival provision was subject to strict scrutiny, the revival provision serves Arkansas's compelling interest in child protection and is narrowly tailored to further that interest with precision.

Arkansas courts have adopted the same two-tiered analysis employed by the United States Supreme Court to determine whether a statute violates due process: where a law infringes upon a "fundamental" right, the law is subject to strict scrutiny and is constitutional only if it is narrowly tailored to serve a compelling state interest; if the law does not infringe upon a fundamental right, then the law is subject only to rational basis review and is constitutional if it is rationally related to a legitimate government interest. *Archer v. Sigma Tau Gamma Alpha Epsilon, Inc.*, 2010 Ark. 8, 11-12, 362 S.W.3d 303, 309–10; *Linder v. Linder*, 72 S.W.3d 841, 855–56 (Ark. 2002).

Under a substantive-due-process analysis, the pertinent question would not be whether the retroactive provision of the legislation impacts a "vested right," but whether the legislation impacts

---

[16] "The modern administrative state with its ubiquitous regulation does not normatively support the traditional presumption against retroactive legislation, as historically it rests on a common law conception of vested property and contract rights that did not survive the New Deal." Eskridge, Dynamic Statutory Interpretation 269 (Harvard Univ. Press 1994).

"In treating vested-rights retroactive legislation in general . . . **the Supreme Court has commonly accorded the legislative judgment of social need the same high degree of credence that is characteristic of all substantive due-process adjudications** . . . . [T]here seems to be little doubt at the present time that legislation can impair or remove accrued rights of action to the same extent that it can impair or destroy other property rights." (emphasis added). W. David Slawson, *Constitutional and Legislative Considerations in Retroactive Lawmaking*, 48 CAL. L. REV. 216, 248–49 (1960).

a fundamental right. *Ark. State Hosp. v. Goslee*, 623 S.W.2d 513, 515 (Ark. 1981) (stating that "the assertion of the vested right must ultimately rest upon the Fourteenth Amendment," with its prohibition against the State's taking of property without due process of law."). Because Arkansas's constitutional due process clause and analysis are the same as the United States Supreme Court's, this Court should give consideration and ultimately deference to the Supreme Court's conclusion that a limitations defense is not a fundamental right:

> **[Statutes of limitations] are by definition arbitrary**, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. shelter has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual. He may, of course, have the protection of the policy while it exists, but **the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.**

*Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314 (1945) (emphasis added).

Furthermore, when it comes to statutes that directly impact the welfare of children, Arkansas courts have a history of carefully considering the U.S. Supreme Court's decisions on whether the legislation implicates fundamental rights. *Arkansas Dept. of Human Services v. Cole*, 2011 Ark. 145, 380 S.W.3d 429, 435–37 (holding a statute prohibiting same-sex partners from fostering children infringed upon the fundamental right of privacy after conducting analysis of *Sherbert v. Verner*, 374 U.S. 398, 404 (1963), abrogation recognized by *Holt v. Hobbs*, 574 U.S. 352 (2015)); *Linder*, 348 Ark. 322, 341-43, 72 S.W.3d at 851–52 (finding statute implicated a parent's fundamental right in the care, custody and control of their children in accordance with *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000)); *Johnson v. State*, 2021 Ark. App. 256, 626 S.W.3d 451, 455–56 (following *Lawrence v. Texas*, 539 U.S. 558 (2003), in concluding that the statute did

16

not infringe upon a fundamental right because adults do not have a fundamental right to engage in sexual activity with a minor). As in these cases, the Justice for Victims Act directly impacts the welfare of Arkansas's children. Therefore, the Act should be subject only to rational basis review.

The Arkansas Supreme Court previously recognized that "the State has a legitimate and 'very high' interest in protecting society from repeat sex offenders," as well as a legitimate interest "in protecting the community from persons who have committed acts that constitute a sex offense." *Arkansas Dept. of Correction v. Bailey*, 368 Ark. 518, 533, 247 S.W.3d 851, 862 (2007) (finding that "sex offenders 'are a serious threat to this nation . . . that they are much more likely than any other type of offender to be re-arrested for a new rape or sex assault.'") (quoting *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 4 (2003)). This Act allows child sex abuse victims to bring suit against the offenders responsible, which in turn acts to identify repeat sex offenders whose crimes might otherwise never be exposed; the effect of this will be that predators are prevented from further sexually abusing more children, which is certainly a legitimate government objective.

By instituting this Act, the Arkansas Legislature permitted victims to file claims that reveal perpetrators and enabler institutions, empowering victims from the past to protect children in the future. Therefore, the Act is clearly rationally related to and effectively serves the legitimate government objective of protecting society from sex offenders and the legitimate government objectives of protecting children, preventing abuse, and providing access to justice for survivors. Accordingly, the Act passes rational-basis review.

Even if the Court were to hold the Defendants have a fundamental right to a limitations defense, which it should not do, the Act still survives strict scrutiny. Protecting children from harm, including sexual abuse, is inarguably among the state's most sacred and important responsibilities; indeed, Arkansas "has an interest in the general welfare of children, and one of its most obvious

17

duties is to protect children from sexual crimes against which children are virtually defenseless." *McGuire v. State*, 706 S.W.2d 360, 361–362 (Ark. 1986). This is surely among the most obvious of Arkansas's compelling interests.

As previously stated, reviving expired claims of child sexual abuse advances the state's interest in protecting children by (1) identifying hidden child predators who endanger children; (2) shifting the cost of abuse from victims and taxpayers to the abusers themselves; and (3) educating the public about the prevalence, signs, and impact of child sexual abuse so that it can be better prevented in the future. The Act's revival window accomplishes this policy narrowly with a fine scalpel rather than a broad sword. The initial burden to state a claim remains on the plaintiff, it is restricted to instances of child sexual abuse, and it mandates that new actions be brought within a short timeframe. Ark. Code Ann. § 16-118-118(b)(2). It does not cast an overly broad net; all child sexual abusers should be brought to justice regardless of when the abuse occurred, consistent with the contemporary science on trauma and patterns of disclosure. The Act is valid under a substantive due process analysis.

C.    **The Justice for Victims Act Applies and *Revives* the Statute of Limitations for Plaintiffs' Title IX and § 1983 Claims.**

1.    **When a Federal Statute "Borrows" a State's Statute of Limitations, it Must Also Borrow that State's Revival Provisions.**

Plaintiffs do not disagree with Defendants that when considering the statute of limitations for a Title IX and § 1983 claim, courts must borrow that state's personal injury statute of limitations.[17] *See Egerdahl v. Hibbing Community College,* 72 F.3d 615, 618 (8th Cir. 1995). However, in applying a state's personal injury statutes of limitations, federal courts must also apply

---

[17] Although Plaintiffs do not fully agree with the position the courts have taken, Plaintiffs concede it is the current law, as neither Title IX nor § 1983 have their own corresponding federal statutes of limitations.

that state's corresponding tolling and revival provisions. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 464 (1975). Plaintiffs, therefore, are not asking this Court to apply some separate, specialized statute of limitations, [18] as Defendant's posit the issue, but rather ask this Court to apply the correct *revival* provision to the general statute of limitations. Here, the corresponding revival provision to Arkansas's general personal injury statute of limitations is the Justice for Victims Act. To Plaintiffs' knowledge, this issue is a matter of first impression in the Eighth Circuit.

### *(a) Owens and Wilson Must Be Considered in Light of their Predecessors.*

Defendants heavily rely upon *Owens v. Okure*, 488 U.S. 235 (1989) and *Wilson v. Garcia*, 471 U.S. 261 (1985) in arguing that the Justice for Victims Act cannot revive Plaintiffs' claims. But before considering *Owens* and *Wilson*, this Court must consider the foundational rules laid out in their predecessors. First, *Johnson v. Railway Express Agency, Inc.,* held that where a federal statute did not contain its own statute of limitations, "the controlling period would ordinarily be the most appropriate one provided by state law." 421 U.S. 454, 462 (1975). Importantly, *Johnson v. Railway* created a rule of law central to this issue: when a federal court borrows a state statute of limitations and applies it to a federal statute that lacks its own statute of limitations, the federal court is also required to borrow the state's tolling, *revival*, and application rules and exceptions:

> Any period of limitation . . . is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action . . . In virtually all statutes of limitations the chronological length of the limitations period *is interrelated with provisions regarding tolling, revival, and questions of application.* In *borrowing* a state period of limitation for application to a federal cause of action, a federal court is relying on the state's wisdom in setting a limit, *and exceptions thereto*, on the prosecution of a closely analogous claim.

---

[18] Indeed, the specialized statute of limitations for child sexual abuse claims in Arkansas is a different statute entirely, codified at Ark. Code § 16-56-130.

*Id.* at 463-64 (emphasis added).

Later *Board of Regents v. Tomanio* reiterated and reaffirmed *Johnson v. Railway*'s ruling that where there is no specifically stated or otherwise relevant statute of limitations for a federal statutory claim, "the controlling period would ordinarily be the most appropriate one provided by state law." 446 U.S. 478, 485 (1980) (quoting, *Johnson v. Railway,* 421 U.S. at 462). *Tomanio* also emphasized that "this 'borrowing' logically included rules of tolling[.]" *Id. Tomanio* stated that to resolve the case, it needed to "identify the New York rule of tolling and determine whether that rule is 'inconsistent' with federal law." *Id.* at 485-486. *Tomanio* also restated the tolling rule for "borrowed" state statutes of limitation, which is central to this issue:

> In virtually all statutes of limitation the chronological length of the limitation period is interrelated with provisions regarding tolling, *revival, and questions of application.*

*Id.* at 485-86 (quoting, *Johnson v. Railway,* 421 U.S. at 463-64).

After *Tomanio* and *Johnson v. Railway*, the Court wanted to instill additional clarity among the courts and held that that all § 1983 claims should be subject to "a simple, broad characterization" as "personal injury" actions for statute of limitations purposes. *Wilson v. Garcia,* 471 U.S. 261, 272, 283 (1985) ("§ 1983 actions are best characterized as personal injury actions," thus requiring application of a state's statute of limitations for personal injury actions). However, to the extent *Wilson* modified the rules set forth in *Tomanio,* it did so *only* by narrowing the choice of the appropriate state statute of limitations that a district court needs to borrow and apply to a Section 1983 claim.

*Wilson* did not, abrogate or modify the rule set forth in *Tomanio* (and, earlier, in *Johnson v. Railway)* that a federal court which borrows a state statute of limitations **must also borrow that state's tolling, revival, and application rules and exceptions**, unless they are inconsistent with federal law. To the contrary, *Wilson* affirmed the *Tomanio* and *Johnson* rule that when borrowing

a state statute of limitations, "closely related questions of tolling and application are to be governed by state law." *Wilson,* 471 U.S. at 269, n.17. *Wilson* even cited with approval the quote from *Johnson* and *Tomanio* which places questions of "tolling, revival, and . . . application" under the purview of state law. *Id.* (citing *Johnson v. Railway,* 421 U.S. at 464; *Tomanio,* 446 U.S. at 484).

Even after *Wilson,* confusion surrounding § 1983 claims remained, with some states applying statutes of limitations for intentional torts while others used the residuary state of limitations for personal injury actions. *Owens v. Okure*, 488 U.S. 235, 241 (1989). Because a voluminous number of states had enacted different statutes of limitations for intentional torts versus personal injuries, *Owens* set out to "provide courts with a rule for determining the appropriate personal injury limitations statute that can be applied with ease and predictability in all 50 states." *Id.* at 243. *Owens,* thus held that "where state law provides multiple statutes of limitation for personal injury actions, courts considering § 1983 claims should borrow the [state's] general or residual statute for personal injury actions." *Id.* at 249-50. Importantly, *Owens* did **not** address any arguments regarding tolling, revival, or questions of application. Indeed, *Owens* did not address the rule of *Johnson v. Railway* and *Tomanio* and did not print one word in their decision about tolling or revival.

Four months after the *Owens* decision, in *Hardin v. Straub,* 490 U.S. 536 (1990), the Supreme Court reaffirmed the continuing applicability of the *Tomanio* rule with respect to a federal court's mandate to apply a state's tolling rules when it borrows a state's general statute of limitations for personal injury actions and applies it to a Section 1983 claim. In *Hardin,* petitioner, who was incarcerated in a Michigan state prison, filed a complaint in 1986 which alleged that prison officials had deprived him of his constitutional rights in 1980 and 1981. It was uncontroverted that the applicable borrowed statute of limitations was Michigan's three-year

statute of limitations for personal injury actions. *Id.* at 540. Petitioner argued that his constitutional claims—which were filed beyond the applicable three-year statute of limitations—were nevertheless timely because of a Michigan tolling statute (Mich. Comp. Laws Ann. § 600.5851(1) (1987)), which tolled the onset of limitations periods for prisoners until one year after their incarceration ended. *Id.* at 540-541. The Sixth Circuit Court of Appeals had refused to apply the Michigan tolling-during-prison statute to petitioner's claims and affirmed the district court's dismissal of his claims as time- barred. *Id.* at 537.

In reliance on the tolling rule for borrowed statutes of limitation set forth in *Tomanio*, *Hardin* **reversed** the lower court's decision and the Sixth Circuit's affirmance, *Id.* at 539-40. *Hardin* reaffirmed that "[l]imitations periods in § 1983 suits are to be determined by reference to the appropriate state statute of limitations **and the coordinate tolling rules**[.]" *Id.* at 539 (quoting *Tomanio,* 446 U.S. at 484) (emphasis added). Accordingly, a state's legislative choices regarding tolling exceptions are "binding rules of law." *Id. (quoting, Tomanio,* 446 U.S. at 484). The *Hardin* Court explained its reasoning for doing so:

> This tradition of borrowing analogous limitations statutes, is based on a congressional decision to defer to "the State's judgment on the proper balance between the policies of repose and the substantive policies of enforcement embodied in the state cause of action." In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application." Courts thus should not unravel state limitations rules unless their full application would defeat the goals of the federal statute at issue.

*Hardin v. Straub*, 490 U.S. 536, 538-39 (1989) (internal citations omitted).

*Hardin* further held that Michigan's tolling statute was not inconsistent with federal law or policy because Michigan's decision to toll the statute of limitations during the inmate's disability did not frustrate § 1983's compensation goal or hinder its interest in deterrence. *Id.* at

543-544 ("court concluded that the Michigan tolling statute reflects a legislative decision to lessen any such difficulties [inmates may have by filing suit while still incarcerated] by extending the time in which prisoners may seek recovery for constitutional injuries").

Although the Justice for Victims Act is a revival statute, rather than a tolling statute like in *Hardin*, the same holding and reasoning goes. In *Hardin* the Michigan tolling statute applied to prisoners, minors, and insane persons.[19] Here, the Justice for Victims Act applies to "vulnerable victims," which is a "person who was either a person with a disability, a minor, or both at the time he or she was a victim of sexual abuse." Ark. Code Ann. § 16-118-118(a)(6). In *Hardin*, the Michigan tolling statute did not distinguish which *types* of actions an incarcerated or incapacitated person could later bring. *Supra* n.19. Similarly here, the Justice for Victims Act does not distinguish which *types* of civil actions a vulnerable victim may bring, only clarifying that it the civil action must be "against any party who committed sexual abuse against the vulnerable victim or whose tortious conduct caused the vulnerable victim to be a victim of sexual abuse." Ark. Code Ann. § 16-118-118(b)(1) ("[A] vulnerable victim may bring a *civil* action . . ."). Finally, as was the case for the Michigan tolling statute, the Justice for Victims Act is not inconsistent with federal law. Plaintiffs' ability to prosecute this case will further Title IX's goals of deterring schools with actual knowledge of sex abuse from supporting or excusing such discriminatory practices, and providing victims of such discrimination with protection and accountability.

A state's legislative choices regarding tolling exceptions are "binding rules of law." *Tomanio,* 446 U.S. at 484; *Hardin,* 490 U.S. at 539. This is true whether a state creates a tolling

---

[19] *Hardin v. Straub*, 490 U.S. 536, 540 (1989) ("[I]f the person first entitled to make an entry or bring an action is under 18 years of age, insane, or imprisoned at the time the claim accrues, the person or those claiming under the person shall have 1 year after the disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run. Mich. Comp. Laws Ann. § 600.5851(1) (1987).").

or revival rule for infancy, insanity, incarceration, or victims of childhood sexual abuse. Like in *Hardin* where the Court applied a Michigan tolling statute to a prisoner's § 1983 claims because it reflected a "legislative decision to lessen any such difficulties by extending the time in which prisoners may seek recovery for constitutional injuries," here this Court should apply the Justice for Victims Act to revive plaintiffs' § 1983 and Title IX claims because the Arkansas legislature decided it was important to revive a vulnerable victim's ability to seek recovery for all civil actions arising from child sexual abuse.

### (b) *Non-precedential Kane Failed to Properly Apply Tomanio, Hardin, and Johnson v. Railway.*

The Institutional Defendants rely upon *Kane v. Mount Pleasant Cent. Sch. Dist.* to support their position that Plaintiffs' claims are time-barred. 80 F.4th 101 (2d Cir. 2023). They reason that *Kane* held that "application of tort-specific revival or tolling provisions, such as New York's Child Victims Act, would require federal courts to engage in the type of analysis *Wilson* forbids." (Dkt. 8, 8). However, nonprecedential *Kane* failed to consider *Wilson* in tandem with the rule of law set out in *Tomanio, Hardin,* and *Johnson v. Railway*.

In making its decision, *Kane* cited to multiple other circuits that had declined to apply child sexual abuse *specialized* statutes of limitations to Title IX and § 1983 claims. 80 F.4th 101, 108-09 (2d Cir. 2023).[20] Yet, **none** of *Kane's* cited cases dealt with a *revival* statute. *Id.* Instead, the cited cases dealt with separate and specialized statutes of limitations for child sexual abuse.

---

[20] *See Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212-13 (10th Cir. 2014) (holding that New Mexico's *special* statute for child sexual abuse did not toll plaintiff's Section 1983 and Title IX claims because it is not generally applicable); *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 580 (9th Cir. 2012) (holding that Oregon's *specialized* abuse statute was not closely related to two-year residual statute of limitations, as required to borrow tolling provision from state law for plaintiff's Section 1983 claim); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759-61 (5th Cir. 2015) (holding that the general statute of limitations applied to plaintiff's Title IX and Section 1983 claims rather than Texas's *specific* limitations period for sexual assault claims); *Woods v. Ill. Dep't of Child. and Fam. Servs.*, 710 F.3d 762, 765-68 (7th Cir. 2013)

Here, Plaintiffs are not asking this Court to apply Arkansas' specialized statute of limitations for child sexual abuse claims (Ark. Code Ann. § 16-56-130), but rather the Justice for Victims Act (Ark. Code § 16-118-118), which is a revival rule that works in tandem with Arkansas's general personal injury statute of limitations (Ark. Code Ann. § 16-56-105). Though *Kane's* cited cases reached an undesirable result, each one faced an entirely different question than the one posed before the Court today. The question before the Court today is whether the Justice for Victims Act *revives* Plaintiffs' Title IX and § 1983 claims. The question is **not** whether this Court should apply Arkansas' separate and specialized statute of limitations for child sexual abuse claims codified at Ark. Code Ann. § 16-56-130.

Although the New York statute that *Kane* considered was also a revival statute for victims of child sexual abuse (similar to Arkansas' Justice for Victims Act), as opposed to a separate, specialized statute of limitations for child sexual abuse, the court failed to fully acknowledge and apply the rule of law set out in *Tomanio, Hardin,* and *Johnson v. Railway*.

Though *Kane* acknowledges that "federal courts are obligated to apply a state's revival and tolling provisions," it also says that when doing so, "the revival or tolling provision must be 'closely related' to the borrowed statute of limitation." *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 109 (2d Cir. 2023) (citing *Wilson*, 471 U.S. at 269).[21] Then, **without citation,** *Kane* goes on to say, "A revival or tolling provision is closely related when it applies to *all*

_____

(declining to apply Illinois' *specific* child sexual abuse statute to revive plaintiff's Section 1983 claim).

[21] It is worth highlighting that this underlying *Wilson* citation cites the very *Johnson* rule of law that Plaintiffs urge the Court to rely upon in the first place. *Wilson v. Garcia*, 471 U.S. 261, 269 n.17 (1985) ("In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, **revival**, and questions of application." *Johnson* v. *Railway Express Agency, Inc.*, 421 U.S. at 464; *see also Chardon* v. *Fumero Soto*, 462 U.S. 650, 657 (1983); *Board of Regents* v. *Tomanio*, 446 U.S., at 484) (emphasis added).

*claims* contained within a general statute of limitations for personal injury actions, such that there is no need to analyze the nature of the underlying claims." *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 109 (2d Cir. 2023) (emphasis in original). But this statement—which lacks any citation—is a misnomer. In applying *any* tolling provision, it is inevitable that a court will have to consider the facts and nature of the claim to see whether the pleaded tolling provision applies to make an otherwise time-barred claim timely.

For example, in applying *Hardin* and the same Michigan tolling statute, a subsequent court had to consider at least three factors *and* underlying supporting facts to determine whether the tolling provision applied to plaintiffs' claims. *Curran v. City of Dearborn*, 957 F. Supp. 2d 877, 884-86 (E.D. Mich. 2013) (considering whether (1) the plaintiff was "insane," as defined by the statute; (2) whether the disability was continuous; and (3) whether the plaintiff filed within one year of removal of the disability).

*Kane* also reframes the at-issue analysis a "tort-specific" question of tolling, but that is not the case. *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 110 (2d Cir. 2023). The Justice for Victims Act (and the New York statute at issue in *Kane*) did not qualify which *types* of tort claims are revived, and which ones are not. Instead the Justice for Victims Act states that "a vulnerable victim may bring a *civil action* against any party who committed sexual abuse against the vulnerable victim or whose tortious conduct caused the vulnerable victim to be a victim of sexual abuse." Ark. Code § 16-118-118(b)(1). Meaning, the only question a court must consider when applying the Justice for Victims Act is (1) whether the plaintiff was a victim of child sexual abuse; (2) whether the defendant is someone who's tortious conduct caused that abuse; and (3) whether they are filing within the requisite revival window. This analysis is as straight forward as

the one the *Curran* court had to consider in applying Michigan's tolling statute for incapacitated persons. 957 F. Supp. 2d at 884-86.

Though *Kane* failed to recognize that the New York statute does not require a "tort-specific" analysis, and so reached the wrong result, the Court does not have to look further than the *Kane* opinion to support Plaintiffs' position:

> Therefore, "generally applicable tolling provisions—such as those based on *minority, incapacity*, and *equitable grounds*—should be incorporated for use under § 1983" and Title IX. *Varnell*, 756 F.3d at 1213. Those types of tolling provisions, which are unrelated to any particular legal theory underlying the individual claims, do not frustrate *Wilson*'s desire to avoid time consuming litigation and uncertainty caused by "an analysis of the particular facts" for each claim to determine the applicable statute of limitations. 471 U.S. at 272, 105 S.Ct. 1938.

*Kane*, 80 F.4th at 109 (emphasis added). Here, the Justice for Victims Act is a revival statute based on a plaintiff's "minority, incapacity, and equitable grounds." *Id*.; *supra* 11-15; Ark. Code § 16-118-118(a)(6) (defining "vulnerable victim" as "a person who was either a person with a disability, a minor, or both at the time he or she was a victim of sexual abuse."). With the Justice for Victims Act, the Court does not have to consider "any particular legal theory underlying the individual claims," but only whether the plaintiff was a victim of child sexual abuse and whether the defendant is someone whose tortious conduct caused the abuse.

In "borrowing" Arkansas' general statute of limitations for personal injury for Title IX and § 1983 claims, this Court has a responsibility under *Tomanio*, *Johnson*, and *Hardin*, to borrow with that Arkansas' "provisions regarding . . . revival." *Johnson* v. *Railway*, 421 U.S. at 464 Therefore, this Court should find that the Justice for Victims Act revives Plaintiffs' Title IX and § 1983 claims, and as such, their claims are not barred.

**2.    In the Alternative, Arkansas' Three-Year Statute of Limitations, When Applied to Title IX Claims Arising out of Child Sexual Abuse, is Inconsistent with the Constitution and Laws of the United States.**

If this Court disagrees with the foregoing analysis and decides that the Justice for Victims Act cannot revive Plaintiffs' claims, the three-year personal injury statute of limitations as applied to Title IX claims arising out of child sexual abuse is "inconsistent with the federal policy underlying the cause of action under consideration." *Johnson v. Railway*, 421 U.S. at 465. The purpose behind the Title IX private right of action is to give individuals an *effective* remedy when they have been "excluded from" or "denied the benefits" of any federally funded education program on the "basis of sex," which can arise in the context of teacher-on-student sexual assault subject to the school's control. 20 U.S.C. § 1681; *Cannon* v. *Univ. of Chicago,* 441 U.S. 677, 705-06 (1979); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281–82, (1998) (holding that a teacher's sexual harassment of a student constitutes discrimination under Title IX).

Thus, for consistency with the federal policy underlying Plaintiffs' Title IX claims, this Court should apply the most analogous federal statute of limitations, namely the statute of limitations for civil remedies arising out of the sexual exploitation and abuse of children. 18 U.S.C. § 2255.  Under 18 U.S.C. § 2255(b), there is now no statute of limitations for filing certain enumerated child sexual abuse claims. Though the statute does not state whether it applies retroactively, it should be applied retroactively for the public policy reasons cited herein. *See supra* 11-15.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request the Court find the Justice for Victims Act revives all of Plaintiffs' claims and deny Defendants' Motions to Dismiss.

DATED: May 15, 2024

                                                  Respectfully submitted,

                                                  TAYLOR LAW PARTNERS LLP

                                                  /s/ Andrew Myers
                                                  Andrew Myers (AR 2020004)
                                                  303 E Millsap Rd
                                                  PO Box 8310
                                                  Fayetteville, AR 72703
                                                  479.443.5222
                                                  479.443.7842 – Facsimile
                                                  amyers@taylorlawpartners.com

                                                  HB ADVOCATES PLLC

                                                  /s/ Hayley H. Baker
                                                  Hayley Hanna Baker (TN Bar No. 37439,
                                                  MO Bar No. 70101)
                                                  *Appearing Pro Hac Vice*
                                                  1831 12th Ave. S. Ste 325
                                                  Nashville, TN 37203
                                                  Email: hbaker@hb-advocates.com
                                                  Phone: (615)505-3260

                                                  *Attorneys for Plaintiffs*

29

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on May 15, 2024, I filed the foregoing with the Clerk of Court, which shall send notification of such filing to all registered counsel of record using the CM/ECF electronic filing system:

   Jay Bequette
   Cody Kees
   Phillip Brick
   425 West Capitol Ave., Ste. 3200
   Little Rock, AR 72201
   Phone: 501-374-1107
   Email: jbequette@bbpalaw.com
      ckees@bbpalaw.com
      pbrick@bbpalaw.com

   Kevin Hickey
   502 Garrison Ave.
   Fort Smith, AR 72901
   Phone: (479) 434-2414
   Email: kevin@kevinhickeylaw.com

             /s/ Hayley H. Baker