below in his declaration did not attempt to describe the writing in the precise words of the instrument, but only according to its legal effect. The question then is whether he has so described it. The declaration speaks of an obligation to pay one hundred and twenty-five dollars, payable twelve months after date and executed by Thomas F. Cheadle in favor of Absalom J. Meredith by the name of "*Abs. J. Meredith.*" The one offered in evidence is made payable "months after date" and executed by Thomas F. Cheadle, and made payable to "*bs. J. Meredith.*" It cannot be contended with any propriety, that the writing declared upon and the one given in evidence to the court, sitting as a jury, are identical or even the same in substance and legal effect. The variance is plain and palpable and that in a material matter, consequently the proof did not correspond with the allegation. This being the case it follows that the circuit court erred in permitting the instrument offered to go to the jury. It is therefore considered and adjudged that the judgment of the circuit court of Crawford county be and the same is hereby reversed, annulled and set aside with costs, and that the case be remanded to said circuit court to be proceeded in according to law, and that both parties have leave to amend their pleadings if they desire to do so.

6   484
57   75
6   484
68   336

## COUCH vs. McKEE.

Courts of justice have expressed the strongest disapprobation of retrospective legislation, and will not give to a law retroactive construction, if it be susceptible of any other—*Calder vs. Bull,* 3 *Dal.* 386, *and Dash vs. Van Kleeck,* 7, *J. R.* 477, *cited with approval.*

The limitation act of December, 1844, (pamphlet Statutes of 1844-5, page 24) was intended by the Legislature, as shown by the language used, to operate prospectively—was designed to apply to causes of action thereafter accruing, and not to those already barred by the laws then in force.

*Davis vs. Minor,* 1 *Howard, Miss. Rep.* 183, *cited with approval.*

The act of 1844 did not revive causes of action barred by the laws in force at the time of its passage, nor deprive defendants of their right to set up the statutory bar as a defence to any suit brought upon such demands.

Debt on a promissory note: plea that defendant sold to M. a slave for $1100, and in payment for the slave, M. transferred to him a note made by D., S. & Co. to M., Y. & Co. (of which firm M. was a member) for the sum of $1561.60, payable at 18 months, and defendant executed to M., Y. & Co. (assignors of plaintiff) the note sued on for the difference between the price of the slave and the amount of the note of D., S. & Co. so assigned to him: that when their note fell due, D., S. & Co. had become insolvent, and the note could not be collected by due dilligence or otherwise, and the amount thereof was wholly lost to the defendant, and that therefore there was a total failure of the consideration for which the note sued on was executed: held that a demurrer was properly sustained to the plea, because it showed no failure of consideration.

*Writ of error to the circuit court of Pulaski county.*

This was an action of debt by William McKee against Jacob B. Couch, determined in the circuit court of Pulaski county in June 1845, before the HON. J. J. CLENDENIN, judge.

The plaintiff declared on a promissory note, made by the defendant to McKee, Young & Co. for $461,60, dated 29th July 1839, due twelve months after its date, and assigned to the plaintiff by the payees.

The declaration was filed, and writ issued on the 1st May 1844.

The defendant filed two pleas: the first, that the cause of action did not accrue to the plaintiff at any time within three years next before the commencement of the suit: the second failure of consideration, in substance as follows:

"And for a further plea &c., the defendant says *actio non*, because he says that on the 8th day of August 1839, at Memphis Tennessee, to wit &c., this defendant re-sold to Lawson B. McKee a negro slave, named *Abram*, for $1100, which slave this defendant had before that bought of said Lawson B., and one James Erwin, for the like sum of $1100 therefor paid to them by this defendant; and it was then and there agreed by and between the said Lawson B. and this defendant, that said Lawson B. should transfer to this defendant, a note of Dixon, Strong & Co. to McKee, Young & Co., of which latter firm the said Lawson B. was a member, for the sum

of $1561.60, dated Memphis 29th January, 1839, and to become due eighteen months after date thereof, in payment for said negro; and that this defendant should execute his note to McKee, Young & Co. for the sum of $461,60 to become due at twelve months from the 29th day of July 1839, being the overplus or difference between the sum of $1100, the stipulated price of said negro, and the amount of said note of Dixon, Strong & Co: which agreement was then and there carried into effect, and this defendant then and there received from said Lawson B. the assignment and transfer of said McKee, Young & Co., of which firm the said Lawson B. was a member, of said note of Dixon, Strong & Co.; and at the same time sold and delivered to said Lawson B. the said negro, *Abram,* and executed to said McKee, Young & Co. his note for the said sum of $461,60 to become due as aforesaid, and which is the same note mentioned in said declaration and no other, in pursuance of said agreement, and for and in consideration of the said assignment and transfer of said McKee, Young & Co. to this defendant of said note of Dixon, Strong & Co., and upon no other consideration whatever: and defendant further says, that when the said note of Dixon, Strong & Co. became due, according to the tenor and effect thereof, the same was not in fact *due and* collectable by the exercise of due legal diligence, or otherwise, by this defendant, and the said firm of McKee, Young & Co., and the persons composing the same, had before then become and continued to be and still are insolvent and irresponsible to this defendant, and the amount thereof became and is wholly and utterly lost to this defendant: and so this defendant says that there is an existing and total failure of the consideration of and upon which said note, in said declaration mentioned, was given and executed; and this defendant is ready to verify: wherefore" &c.—usual conclusion. The plea was verified by affidavit. The plaintiff's counsel moved the court to strike out the first plea, upon the ground that it was no answer to the declaration; and demurred to the second plea, assigning the following causes of demurrer:

"1st, said plea shows no failure of consideration: 2d, it shows no total failure of consideration: 3d, it shows no liability of said McKee,

OF THE STATE OF ARKANSAS. 487

April, 1846.] Couch *vs.* McKee.

Young & Co. on the said assignment of said note of Dixon, Strong & Co. to said defendant: and 4th said plea shows that the assignment of said note of Dixon, Strong & Co. to said defendant, by McKee, Young & Co. was the consideration for the note sued on, which is, in law, a sufficient consideration.

The court sustained the motion to strike out the first plea, to which the defendant excepted, and took a bill of exceptions setting out the plea &c. The court also sustained the demurrer to the second plea, and, the defendant declining to plead further, rendered final judgment for the plaintiff.

Defendant brought error.

WATKINS & CURRAN, for the plaintiff.

The effect of a statute of limitation upon causes of action *existing* at the time of its passage, is the same as upon those accruing on the day it took effect. *The people vs. The Supervisors of Columbia*, 10 Wend, 363. It is evident from the record that McKee's action was barred at the time of the passage of the act of '44—if so, did that act revive it? When a law, that merely affects or changes the remedy upon, and does not impair the obligation of, contracts, is *expressly made* retrospective, courts will give it that operation; but unless a contrary intention is clearly evinced it is a universal rule to construe such statutes so as to make them operate prospectively. The essence of a new rule is, that it forms a law for future cases. *Sayre vs. Winser*, 8 Wend. 663; *Dash vs. Van Kleeck* 7. J. R. 477.

We are ready to concede that statutes of limitation only affect the *remedy* upon contracts, and that the time limited for instituting suits may be shortened or extended, at the will of the legislature, so that an existing remedy is not entirely cut off; and indeed we may admit that the legislature possesses the constitutional power to, and *could* have revived the right of action in this case, but what we deny is, that it *has* done so.

The cases which decide that a statute will not be construed to act retrospectively unless such is clearly the intention of the legis-

lature, necessarily apply to statutes of limitation, because the principle can only obtain in construing statutes affecting the remedy,—a statute which operated upon the *obligation*, on account of the constitutional impediment, could not, by the use of any language evincing such an intention on the part of the legislature, be made retrospective,—consequently there would be no necessity for such a rule in the construction of statutes of the latter description. It is evident from the language employed in the 1st section (the one involved in this case) of the act of December 14th 1844, that it was the intention of the legislature to make it prospective. The 3d section is made to act retrospectively and the claims of non residents which were then barred are thereby expressly revived; and if it was the intention to revive the class of claims included in the 1st section, why was not the same language used in the 1st as in the 3d section, or why was it necessary *expressly* to make the 3d section retrospective, if the language employed in the 1st implied, or had the effect?

So great an encroachment upon natural justice, are laws, which even operate upon the remedy retrospectively, always considered, that it has become a fixed and universal rule never to give such statutes a retroactive operation, *unless such an intention on the part of the legislature, is positively expressed: Whitman vs. Hopgood* 10 Mass. Rep. 437; *Inhabitants of Somerset vs. Inhabitants of Dighton* 10 Mass. Rep. 383; *Colder vs. Bull* 2 Dallas, 386.

From the fact that it is contrary to the policy of statutes of limitation, and subversive of the end to be attained thereby, to make changes in them, there have been but few adjudications upon the precise point in this case—But even if there were no adjudged cases upon the question, there can be no difficulty in ariving at a correct conclusion upon principle, if the following propositions are true, viz: 1st, that the first section of this act is *not expressly* made retrospective, and, 2d that unless such a statute is expressly so made, courts will not give it a retrospective operation.

In the case of *Taylor vs. Henderson adm'r. of Peck*, 2 Devereux Rep. 372, it was held that actions barred will not be revived or in any manner affected by the passage of a new statute of limitations.

So in *Biglows Exr's. vs. Biglows adm'r.* 6 Ohio Rep. 97, and in *Davis vs. Minor et ux.*, 1 Howard's Miss. Rep. 183 the same principle was ruled. In the last case the high court of appeals in Miss. carry the principle to much greater length than we contend for in this; in that case the court not only hold that a subsequent act will not be construed to revive a cause of action barred by the old statute *unless* it is so expressed, but even go so far as to deny the power of the legislature, by express statute, to revive a cause of action once barred.

In this case we admit that the legislature *could* have revived the right of action, but deny that it *has* done so.

The construction we contend for was placed upon a statute, in principle, similar to this, in Penn: *vide Eakin et al. vs. Raub et al.* 12 Serg. & Rawle *p.* 340:

Statutes of limitation are now more than in former times, liberally construed in favor of defendants. A plea of the statute instead of being viewed in an unfavorable light, as an unjust and discreditable defence, should receive such support from courts of justice, as would make that class of statutes what they were intended to be, emphatically statutes of repose—vide *Bell vs. Morrison et al.* 1. Peters Rep. 357 and cases there cited.

RINGO & TRAPNALL, contra.

The said defendant, McKee, by his attorney presents for the consideration of the court the points and authorities following, viz:

1. That every right, whether it be a right of action or of defence, must be a subsisting legal right, invested in the party asserting it, at the period of the adjudication thereof; otherwise, the adjudication thereupon must be against the party asserting such right. *The Irresistible,* 5 *Cond. Rep.* 343, *United States vs. Passmore,* 4 *Dall.* 371: *Yeaton et al. vs United States,* 2 *Cond. Rep.* 256, *United States vs. the Helen, ib.* 346. *The Rachel vs. United States, ib.* 388, *United States vs. Preston, Attorney General,* 3 *Pet. Rep.* 57; *Gray et al. vs. Real Estate Bank,* 5 *Ark. Rep.* 93.

2. That no person can acquire a vested right in any particular mode of proceeding prescribed by a general law, so as to entitle

him to use the same in the assertion of any supposed right whether of action or defence, after such law has been repealed, or otherwise ceased to be the rule either as it regards the right asserted, or the mode and time of asserting it. This principle appears to the defendant to be well established by the cases cited above.

3. Statutes of limitation affect the remedy alone; do not affect any right protected either by the constitution of the United States, or this state. Therefore no right depending upon them can become vested in any person. But the legislature may at will renew, extend or contract the period as well in respect to contracts and rights of action pre-existing, as to such as may be made, or arise subsequently: and the term prescribed at the day and place of adjudication always furnishes the rule by which the right of the parties in this particular must be ascertained and determined. *Bank of the United States vs. Donnally*, 8 *Peters* 361. *McCluny vs. Silliman*, 3 *Peters* 270. *Calder et ux. vs. Bull et ux.* 1 *Cond. Rep.* 172. *Commonwealth vs. McCowan* 4 *Bibb* 62. *McElmoyle vs. Cohen*, 13 *Peters* 312.

4. The 1st plea (the plea of the statute of limitation of 3 years was interposed on the supposition that the 6*th sec. of the* 91*st ch. Rev. St. Ark.* governed the remedy in this particular instead of the 1st Sec. of the statute of Decr. 1844, session acts 24) was properly stricken from the records of the case, because it set up as a bar to the action the time prescribed by the former, instead of that prescribed by the latter statute, which was in operation both when the plea was pleaded and the adjudication thereupon made, and furnished the rule by which the remedy in this particular must be governed, and the right of the parties determined.

5. The period of limitation prescribed by the statute of 1844 for the institution of actions on promissory notes, being 5 years from the day the cause of action accrued, and that prescribed by the statute of March 3, 1838, being 3 years, both cannot operate at the same time, and therefore the former statute is by necessary implication superseded and repealed by the latter statute.

6. Two periods of limitation in respect to the same right of action cannot co-exist; and the clear and palpable design of the first

part of the 1st Sec. of the statute of 1844, being to regulate the remedy upon *all promissory notes and other instruments in writing not under seal*, and prescribe *the period* within which the remedy upon such liabilities may and must be prosecuted, there can be no other rule in regard thereto beside that prescribed by said statute; nor would any interpretation thereof restricting this rule to a portion only of such contracts and applying a different rule to another portion, be consistent with the manifest design of the law, or any known precedent, but repugnant to the former and without the authority of the latter—The plea was therefore inapplicable in the case and rightly excluded from it as a defence now unknown to the latter in such case.

7. The act of 1844 establishes a rule applicable to all cases of unsealed contracts; and the essence of a new rule is, that all cases within it subsequently adjudged must be determined by it. It applies to demands existing at the time of its going into operation and regards them as rights of action accruing on that day; and they may be sued upon at any time within the period prescribed by the new rule. *The People vs. Supervisors of Columbia*, 10 *Wend*. 363. *Baldwin vs. Cross*, 5 *Ark. Rep*. 510. *Dickerson vs. Morrison*, decided by this court at the present term.

8. The second plea discloses a case of mixed consideration, where the plaintiff in error for his negro sold to Lawson B. McKee (not the defendant, nor in any-wise connected with him as respects the note or negro in question,) and his note (the note now in suit) payable to the defendant in error, agreed to receive and did receive of said L. B. McKee, a note of Dixon, Strong & Co. payable to McKee, Young & Co. transferred by the latter to the plaintiff in error, for $1561 60, dated the 29th January 1839 payable 18 months months after date. The transaction therefor was one of barter, the plaintiff giving his negro at the price of $1100 and his promissory note for $461,60 payable at a future day for the transfer of the note of Dixon, Strong & Co. payable also at a future day without any express guarantee of the solvency of any of the parties by either McKee or Couch. The contract therefore was not executory, but fully executed in all its parts, so soon as the plain-

se 4:24-cv-00339-LPR    Document 27-1    Filed 05/15/24    Page 9 o

tiff delivered the negro and his note aforesaid to L. B. McKee, and said L. B. McKee, for the firm of McKee, Young & Co. endorsed, transferred and delivered the note of Dixon, Strong & Co. to Couch; all of which was done at the time the contract was completed. The full consideration therefore for the contract on each side was then received by the respective contracting parties —it was a chancing bargain, in which each party took upon himself the entire risk in respect to the thing received: the demurrer thereto was therefore rightly sustained, the plea not showing any failure of consideration; nor is it a good plea of non est factum, because it admits the execution and delivery of the note, notwithstanding it claims that the transaction was of a different date from that of the note: and that the note was to have been given to McKee, Young & Co. showing by implication that by mistake it bears an improper date and is payable to a wrong party.

OLDHAM, J. delivered the opinion of the court.

This was an action of debt instituted in the circuit court of Pulaski county by McKee against Couch upon a promissory note. The defendant interposed two pleas in bar of the plaintiff's recovery: 1st, That the cause of action did not accrue within three years next before the commencement of this suit; and *second*, that the consideration for which the promissory note sued upon was executed, had failed. The plaintiff below moved to strike out the first plea, which motion being sustained by the court, the defendant excepted. The plaintiff demurred to the second plea, which was sustained by the court and the plea adjudged bad; The defendant saying nothing further, final judgment was rendered in favor of the plaintifl upon the demurrer. The correctness of the decision of the circuit court upon the two pleas thus disposed of, is called in question by the assignment of errors.

The decision upon the first plea presents the question whether the act of the legislature passed Dec'r. 14th 1844, extending the limitation of actions at law, and repealing all other statutes upon the subject, revived causes of action already barred by previous statutes. The determination of this question depends upon the op-

eration of the act referred to, whether retrospective or prospective.

The great injustice of retrospective legislation has been frequently exposed by courts of justice, and their disapprobation of such laws has been expressed in the strongest language. It is not necessary to repeat the objections that have so frequently been urged against such legislation, but we will only refer to the case of *Calder vs. Bull*, 3 *Dall.* 386, and to the opinions of a majority of the judges in *Dash vs. Van Kleeck*, 7 *J. R.* 477, for reasons strong and insuperable against retroactive laws, and against giving a law a retroactive construction, if it be susceptible of any other.

It is clear from the language employed by the legislature in the act under consideration, that it was intended that its operation should be prospective; that it was intended to apply to causes of action thereafter accruing, and not to those already barred by the laws then in force. The language employed is " that actions on promissory notes and other instruments in writing not under seal, shall be commenced within five years after the cause of action shall accrue and not after"—language relating to future causes of action and not to those already barred. As far as courts of justice have ever gone in giving operative effect to statutes of limitations to contracts existing at the time of their passage, is to such contracts as are not barred by previous statutes. *The People vs. Supervisors &c.* 10 *Wend.* 375. *Baldwin vs. Cross* 5 *Ark.* 510.

The impolicy of legislative changes of the laws is too well known and understood by members of the legal profession to require comment. Great injury, vexatious and protracted litigation often result from an unwise alteration of existing laws, which have already received a judicial construction. If the law under consideration is to receive the construction, contended for by the defendant in error, the impolicy of changing statutes of limitation is more manifest than in any other case, unless the new law is confined in its operation by express words to future contracts, and not permitted to extend to those already barred. Otherwise, parties defendant would be unjustly deprived of defences acquired under laws previously existing, and subjected to the payment of demands against which they had acquired a valid legal defence.

e 4:24-cv-00339-LPR   Document 27-1   Filed 05/15/24   Page 11 o

The question now before the court was determined in the supreme court of Mississippi in *Davis vs. Minor*, 1 *How.* 183. The reasoning of the court is, to our minds, a conclusive answer to many of the positions assumed by the counsel for the defendant in error. It was there said by *Sharkey* Ch. J, in delivering the opinion of the court that "By a numerous train of decisions it is held that the statute of limitations operates on and affects the remedy merely, and is not to extend its influence to the construction of the contract, or what is called the right. Without pretending to question the truth of this position, I think the effect or operation and the remedy may clothe a party with a defence, or a right to set up a resistance which cannot be taken from him without his consent. If a party be deprived of his remedy, in what does his right consist? Whatever the rule may be in morals, in a purely legal point of view, I think it is difficult to imagine the existence of a right without some adequate remedy. It is a maxim that there is no right without a corresponding remedy; by which I understand that they are dependent terms; that one cannot exist without the other; that the idea of a right is predicated upon and necessarily carries with it, as essential to its existence, the means also of enforcing it; and the moment the remedy is destroyed the right must go with it. It is true the remedy may be suspended by the force of circumstances over which the party has no control, and in which he does not act. If it be true that the remedy is a constituent part of a right (and they cannot exist separately) must it not follow that whatever destroys the one must destroy the other? If the statute of limitations should operate only as a suspension of the remedy and not as a total destruction of it, the result would be the same, as that suspension is the consequence of the acts of the claimant, and it is a well settled rule that a remedy, suspended by the act of the party entitled to it, is forever gone. The holding up of the claim until the statute had run was the act of the party and by it he lost his remedy, and at the same time a good defence was vested in the opposite party. If the application be made to the present case, can it be true that the statute of limitations destroyed the remedy of the plaintiffs below but left the right undisturbed to take

effect upon the happening of a contingency in which the defendant had no agency? To my mind it is clear that the moment the remedy was gone by the running of the statute, the right was gone also, and a right to set this lapse of time up as a defence, vested in the opposite party, and he could not be deprived of the privilege without his consent by subsequent legislation. This must be the rule if a defence may form the subject of a right, and that it may, seems to me most clear. Defences, like causes of action, are of various kinds, arising by operation of law, predicated on some act or supposed act of the parties, or by connection or agreement between them and in either case must be equally operative. A bar created by the statute of limitations is as effectual as a payment, and a defendant cannot be deprived of the benefit of such payment, nor the evidence to support it, and having provided himself with evidence sufficient and legal at the time of payment, no law can change the nature or destroy the sufficiency of the evidence."

At the time of bringing this suit, three years had elapsed, which formed a complete bar to the plaintiff's right of recovery, by virtue of the laws then existing. The defendants right to set up this lapse of time as a defence to bar the plaintiff's recovery was a legal right, of which he could not in justice be deprived by subsequent legislation. At the time of bringing the suit the plaintiff had no cause of action which by law entitled him to a recovery against the defendant and if the legislature, by repealing the laws then in force and extending the limitation, revived causes of action already barred and deprived the defendant of his legal and valid defence, its operation would be to take from the defendant by force of legislation the sum claimed in the declaration, which by law was his own property and transfer it to the plaintiff, who, at the time of bringing the suit, had no lawful claim whatever to its recovery.

The proposition that the legislature has the power to take the property of one man and transfer it to another, is at once monstrous and absurd. And what is the difference between that proposition and the one that the legislature has the power to deprive a man of a legal defence against a demand set up against him? In the first case the action would be direct and fully understood; in

the second, it would be indirect, taking the property of the defendant under the form of a judicial sentence by depriving him of a valid defence against a demand invalid in law.

In *Lewis vs. Taylor*, 2 *Devereux* 374, it was held by the supreme court of North Carolina that actions on judgments before a justice of the peace, being barred by one act, were not revived by a subsequent act extending the time of limitation.

The counsel for the plaintiff in error have referred the court to the case of *Bigelow's Ex'r. vs. Bigelow's Ad'r.* 6 *Ohio Rep.* for a decision of the supreme court of Ohio holding the same doctrine, but we have been unable to obtain the authority referred to.

The court is of opinion that the act of December 14th 1844 did not revive causes of action barred by the laws in force at the time of its passage, nor deprive defendants of their right to set up the statutory bar as a defence to any suit brought upon such demands, and that consequently the circuit court erred in striking out the plea of the defendant below.

The demurrer to the second plea, alleging a failure of consideration, was properly sustained by the circuit court. Where there has been a failure of consideration of a contract, and a suit is brought upon the contract, the defendant may set up such failure as a bar to a recovery against him. And where money has been paid or deposited upon a contract, and, before any benefit has been derived by the payor, or any part of the contract has been performed by the opposite party, the consideration wholly fails, an action may be maintained upon the common counts to recover the amount so paid or deposited. *Chitty on Contracts* 622. Had Couch at the time of the purchase of the note of Dixon, Strong & Co. paid to Lawson B. McKee the amount in cash instead of giving his note for a part, and a negro for the residue, he would not, under the circumstances, be intitled to recover the amount so paid upon the common counts for money had and received. The plea does not show that McKee, or McKee, Young & Co. guaranteed the payment of the note, or that Dixon, Strong & Co. were insolvent at the time of the endorsement of their note to Couch, and that McKee was aware of the fact and the defendant ignorant of it. It

does not show that when the note of Dixon, Strong & Co. became due demand of payment was made of them and notice of non payment given to the endorsers according to the law merchant. It will not be contended for a moment that the purchaser of a note may recover the amount which he may have given for it, because the maker may have become insolvent. Nor can he resist a payment of a note given under such circumstances upon the grounds of a failure of consideration. The plea shows no failure of consideration and was properly adjudged bad: But for the error in striking out the first plea the judgment *must be* reversed.

---

## ADAMS ET AL. *vs.* STATE, USE OF WALLACE.

It is a general rule that profert is not necessary of public records, or of deeds to which the plaintiff has not the right of possession.

This rule applies to the originals of sheriff's bonds, but does not supersede the necessity for profert of a certified copy, as by statute such copy is made evidence to the same extent as the originals.

Profert of such copy necessarily includes the condition as well as the bond, the former being prescribed by law, and indispensable to the binding force of the bond in its official character.

The declaration, after reciting in the usual form as to date, place and manner of execution, makes profert thus: "a certified copy of which said writing obligatory is now to the court here shown"—held to be sufficiently comprehensive, and to embrace the condition of the bond as fully and certainly as if the words—"and also the condition thereof"—had been added.

Where the declaration assigns several breaches of the condition of the bond, some of which are good and others bad, on demurrer, the plaintiff is entitled to judgment.

In action on sheriff's bond for failing to make the money on an execution, where a breach, assigned in the declaration, alleges that at the time the execution came to the sheriff's hands, the defendant therein had sufficient property in the sheriff's bailiwick to satisfy the execution, that he levied upon the property of the defendant in the execution, advertised it for sale to satisfy the execution, but wholly failed and neglected to sell the same or any part thereof, the breach is substantially good.

On demurrer to the declaration, and judgment for plaintiff, the order for the jury should