IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JANE DOE and SALLY DOE**                                                            **PLAINTIFFS**

**v.**                            **Case No. 4:24-cv-00339-LPR**

**DARDANELLE SCHOOL DISTRICT,**
**ARTHUR J. GALLAGHER & CO., - LITTLE ROCK,**
**ROLANDO VALLS, Individually**
**and in his Official Capacity as coach and teacher,**
**DIANE THOMAS, Individually and in her**
**Official Capacity as principal,**
**ESTATE OF BJ CHANDLER, Individually and in**
**his Official Capacity,**
**MARK GOTCHER, in his Official Capacity,**
**and JOHN DOES 1-10**                                                              **DEFENDANTS**

## REPLY BRIEF IN SUPPORT OF SEPARATE DEFENDANTS DARDANELLE SCHOOL DISTRICT, ROLANDO VALLS, IN HIS OFFICIAL CAPACITY, DIANE THOMAS, AND MARK GOTCHER'S MOTION TO DISMISS

For their Reply Brief in Support of their Motion to Dismiss, Separate Defendants Dardanelle School District; Rolando Valls, in his official capacity; Diane Thomas, in her individual and official capacities; and Mark Gotcher, in his official capacity (collectively, "District Defendants"), by their attorneys, Bequette, Billingsley & Kees, P.A., state:

**I.   INTRODUCTION.**

Plaintiffs rely upon the Justice for Vulnerable Victims of Sexual Abuse Act, Ark. Code Ann. § 16-118-118 (the "Revival Act"), to attempt to revive claims against the District Defendants that were time-barred decades ago. Yet, the Arkansas Supreme Court has been consistent and clear that the legislature cannot revive a cause of action already barred. This Court must apply Arkansas precedent to dismiss Plaintiffs' claims. Federal precedent is likewise consistent and clear that Plaintiffs' section 1983 and Title IX claims are subject to Arkansas's general personal-injury statute of limitations and tolling provisions. Plaintiffs' attempt to rely on a more specific revival

statute or statute of limitations is in error. Plaintiffs' claims must, therefore, be dismissed based on the appliable statutes of limitations. Fed. R. Civ. P. 12(b)(6).

## II.   AUTHORITY AND ANALYSIS.

### A.   The District Defendants Do Not Oppose Plaintiffs' Request for a Stay If the Stay Applies to All Proceedings.

Plaintiffs correctly note that the issue of whether the Revival Act is constitutional or otherwise effective is currently pending before the Arkansas Court of Appeals, in *HC, et al. v. Nesmith*, CV-23-328. While the District Defendants maintain the Revival Act is ineffective under existing Arkansas Supreme Court precedent and the Revival Act has no effect on Plaintiffs' federal claims, the District Defendants do not oppose staying this case until final resolution of this issue before the Arkansas appellate courts, if the Court believes that to be most prudent. Any stay of the pending motions to dismiss, however, should include a stay of all proceedings, including without limitation a stay of all discovery.

The power to stay proceedings is committed to this Court's discretion, being "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself for counsel, and for litigants." *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013). To stay discovery because of a motion to dismiss, a district court considers the following factors: (1) whether the movant has shown a likelihood of success on the merits of the dispositive motion; (2) hardship or inequity to the moving party if the matter is not stayed; (3) prejudice to the non-moving party if the matter is stayed; and (4) the conservation of judicial resources. *Hatfield v. Ornelas*, No. 5:22-CV-05110, 2022 U.S. Dist. LEXIS 141610, at *2 (W.D. Ark. Aug. 4, 2022). Here, as addressed herein, the District Defendants have shown a likelihood of success on the merits. If discovery is not stayed, Defendants (and Plaintiffs) would be subject to extensive discovery while the dispositive motions are put on hold, at Plaintiffs' request. Plaintiffs would not be prejudiced by a stay in discovery, as it is Plaintiffs' request to stay

2

resolution of the pending motions. Moreover, Plaintiffs' claims occurred nearly forty (40) years ago. There is no pressing need now to engage in discovery. Further, conducting discovery prior to a ruling would not conserve judicial resources. Taking the above factors into consideration, if the Court stays its ruling on the motions to dismiss, all discovery and other proceedings in this case should also be stayed.

        **B.    Apply Arkansas Supreme Court Precedent, Plaintiffs' State Law Claims Are Barred by the Statute of Limitations.**

Plaintiffs rely solely on the Revival Act to argue their state law claims are timely. Because the Court is applying Arkansas law to those causes of action, the Court is "bound by the decisions of the [Arkansas] Supreme Court." *Engineered Sales, Co. v. Endress + Hauser, Inc.*, 980 F.3d 597, 599 (8th Cir. 2020); *see also Walker v. Barrett*, 650 F.3d 1198, 1203 (8th Cir. 2018) (recognizing that federal courts apply state law to state-law claims accepted under supplemental jurisdiction and are bound by the decisions of the state supreme court). If the Arkansas Supreme Court has not spoken on a particular issue, the Court "must attempt to predict how the [Arkansas] Supreme Court would decide it and may consider relevant state precedent, analogous decisions, considered dicta[,] and any other reliable data." *Engineered Sales*, 980 F.3d at 599.

In this case, the decisions of the Arkansas Supreme Court are clear that "after a cause of action has become barred by the statute of limitations, the defendant has a vested right to rely on that statute as a defense, and neither a constitutional convention nor the Legislature has power to divest that right and revive the cause of action." *Johnson v. Lilly*, 308 Ark. 201, 203-04, 823 S.W.2d 883, 885 (1992). *See also Hall v. Summit Contractors, Inc.*, 356 Ark. 609, 614, 158 S.W.3d 185, 188 (2004); *Green v. Bell*, 308 Ark. 473, 478 n.1, 826 S.W.2d 226, 229 (1992) *Miller v. Subiaco Acad.*, 386 F. Supp. 2d 1025, 1027-29 (W.D. Ark. 2005) (applying Arkansas Supreme

Court precedent). Plaintiffs do not cite any Arkansas Supreme Court precedent to the contrary that would allow for the legislative revival of time-barred claims.[1]

Plaintiffs challenge the holding in *Johnson* by claiming the precedent it relies upon is unsupportive and does not address legislation that explicitly revives barred claims. In making their argument, however, Plaintiffs cherry-pick the supporting authority and omit *Wasson v State ex. rel Jackson,* 187 Ark. 537, 60 S.W.2d 1020 (1933). In *Wasson*, the legislature expressly sought to revive expired claims against a bank that had been taken over by the State Bank Commissioner. *Id.* at 538, 60 S.W.2d at 1020. The Arkansas Supreme Court noted, "[t]he purpose of this act was to revive and validate claims which had been barred for failure to file same within the time required by law." *Id.* The court held, "This purpose and intent rendered the act void." *Id.* Thus, the Arkansas Supreme Court has directly held the legislature cannot revive time-barred claims even if that is the expressed intent of the legislation. Plaintiffs' attempt to distinguish the Revival Act because it explicitly attempts to revive time-barred claims is, therefore, unavailing.

Plaintiffs further attempt to make a distinction from the precedent because a number of the Arkansas cases concern contractual rights, but Plaintiffs fail to provide any authority that makes this a distinction of consequence. This argument further ignores Arkansas precedent that precludes the legislative revival of time-barred tort claims. In *Hall*, the Arkansas Supreme Court applied its precedent to a wrongful-death claim. 356 Ark. at 614, 158 S.W.3d at 188. Accordingly, Arkansas law is clear that the legislature cannot revive a time-barred claim, whether under contract, tort, or otherwise.

---

[1] Plaintiffs cite to *Davis v. Parham*, 362 Ark. 352, 208 S.W.3d 162 (2005), for the general proposition that setting a statute of limitations is a matter of public policy within the legislative domain. The issues in *Davis* did not involve the revival of any time-barred claims but instead challenged the two-year statute of limitations in the Medical Malpractice Act. Thus, this case is inapplicable.

In sum, Plaintiffs rely upon the Revival Act to attempt to revive claims that have long been barred by the applicable statute of limitations. Arkansas Supreme Court precedent is clear this is not possible. *Johnson*, 308 Ark. at 203-04, 823 S.W.2d at 885. This Court must apply this Arkansas precedent and dismiss this case.

### C.    Plaintiffs' Argument Seeking to Overturn Arkansas Supreme Court Precedent Should Be Rejected.

Plaintiffs erroneously rely upon United State Supreme Court precedent to argue that a statute of limitations can be revived under Arkansas law. The Arkansas Supreme Court acknowledged this United States Supreme Court precedent but nonetheless held that the state legislature cannot revive a cause of action under Arkansas law:

> The Supreme Court of the United States has held that in all cases except those involving title to property a legislature can, consistent with the Fourteenth Amendment, extend or repeal a statute of limitation, even after the cause of action has been barred. *See Chase Sec. Corp. v. Donaldson*, 325 U.S. 304 (1945); *Campbell v. Holt*, 115 U.S. 620 (1885).
>
> However, we have long taken the view, along with a majority of the other states, that the legislature cannot expand a statute of limitation so as to revive a cause of action already barred. *Rhodes v. Cannon*, 112 Ark. 6, 164 S.W. 752 (1914); *Couch v McKee*, 6 Ark. 484 (1845).

*Johnson*, 308 Ark. at 203. Plaintiffs' reliance on federal precedent on this issue of state law is in error.

Plaintiffs' argument in favor of the Revival Act further seeks to overturn Arkansas Supreme Court precedent, but this Court must apply Arkansas Supreme Court precedent, not determine whether that precedent should be overturned. *See Engineered Sales, Co.*, 980 F.3d at 599. In advocating for a change in Arkansas law, Plaintiffs argue that some test should be applied

5

to a vested right in a statute of limitations defense.[2] First, Plaintiffs contend that the vested-rights doctrine is "not grounded in any constitutional provision or reasoning" and should, therefore, yield to various public policy concerns with childhood sexual abuse. Second and in the alternative, Plaintiffs contend that the vested-rights analysis should be abandoned in favor of an ill-defined notion of substantive due process that would validate nearly any legislative encroachment. Neither test or analysis has been applied or adopted by the Arkansas Supreme Court in this context and, therefore, neither of Plaintiffs' proffered tests should be applied by this Court. To the extent this Court considers these arguments, however, the District Defendants address them below.

        1.      <u>The Vested Rights Doctrine Is Firmly Rooted in Arkansas Constitutional Principles of Due Process.</u>

Contrary to Plaintiffs' claim, the vested-rights doctrine is firmly rooted in Arkansas constitutional law as a due process limitation on legislative authority. The doctrine is based upon fundamental principles of fairness and preventing legislative encroachment on the judicial function of deciding individual cases. For over 180 years, Arkansas has embraced the principle that the General Assembly possesses no power to divest legal or equitable rights previously vested, which include the vested right in the defense of the statute of limitations.

Within a few years of statehood, the Arkansas Supreme Court announced the fundamental principle of the vested rights doctrine as a due process limitation on legislative power. *See Brown v. Morison & Sullivan*, 5 Ark. 217, 221 (1843) ("The Legislature possesses no power to divest legal or equitable rights previously vested."). In *Couch v. McKee*, the Court applied this principle to the vested right of a statute of limitations defense:

> The defendant's right to set up this lapse of time as a defense to bar the plaintiff's recovery was a legal right, of which he could not in justice be deprived by subsequent legislation. . . . [I]f the legislature, by repealing the laws then in force and extending the limitation,

---

[2]  Plaintiffs' arguments on these issues are nearly identical to the arguments raised by the appellants in *HC, et al. v. Nesmith*, CV-23-328, pending before the Arkansas Court of Appeals.

> revived causes of action already barred and deprived the defendant of his legal and valid defense, its operation would be to take from the defendant by force of legislation the sum claimed in the declaration, which by law was his own property and transfer it to the plaintiff, who, at the time of bringing the suit, had no lawful claim whatever to its recover.
>
> The proposition that the legislature has the power to take the property of one man and transfer it to another is at once monstrous and absurd. And what is the difference between that proposition and the one that the legislature has the power to deprive a man of a legal defense against a demand set up against him? In the first case the action would be direct and fully understood; in the second, it would be indirect, taking the property of the defendant under the form of a judicial sentence by depriving him of a valid defense against a demand invalid in law.

6 Ark. 484, 495-96 (1846); *see also Rhodes v. Cannon*, 112 Ark. 6, 14, 164 S.W. 752, 754 ("[W]e assume that the Legislature also had in mind the decision of this court in the case of *Couch v. McKee*, 6 Ark. 484, wherein it was said that one could have a vested right in the defense of the statute of limitations, of which one could not be deprived by subsequent legislation.")

This holding—confirmed by later decisions—reflected the nineteenth century view that due process was, at least in part, a component of separation of powers analyzed under the notion of vested rights:

> The basic idea of due process, both at the Founding and at the time of the adoption of the Fourteenth Amendment [1868], was that the law of the land required each branch of government to operate in a distinctive manner, at least when the effect was to deprive a person of liberty or property. . . . The legislative branch could enact general laws for the future, including the rules for acquisition and use of property, but could not assume the "judicial" power of deciding individual cases. *This meant the legislature could not retrospectively divest a person of vested rights that had been lawfully acquired under the rules in place at the time*.

Nathan S. Chapman & Michael W. McConnell, *Due Process as Separation of Powers*, 121 YALE L.J. 1672, 1781-82 (2012) (emphasis added); *see also Mitchell v. Roberts*, 469 P.3d 901, 909-10 (Utah 2020) (discussing "due process" as understood in the late nineteenth century).

7

Throughout the nineteenth century, "courts invalidated legislative acts to protect vested rights because the acts were quasi-judicial 'sentences' rather than genuine 'laws.'" *Id.* at 1738. Such retroactive divestment statutes were viewed as judicial in nature, *i.e.*, "deciding individual cases," because the laws were backward-looking and operated to deprive individuals of rights in property "acquired under the rules in place at the time" of acquisition. *Id.* at 1782. "Because divestment statutes operated to confiscate or vitiate previously vested rights, the nineteenth-century public viewed these laws as 'judicial decrees in disguise.' And the public viewed such legislative encroachment into the domain of the judiciary as unconstitutional both as a matter of the principle of separation of powers itself and under the due process clause, which was understood as policing the division of powers between coordinate branches of government." *Mitchell*, 469 P.3d at 910 (internal citations omitted).

This reasoning is consistent with Arkansas case law as reflected in *Couch, supra*. Further, the holding in *Couch* has been invariably applied up to the present day and is consistent with the holdings of many sister states interpreting analogous constitutional provisions. *See e.g. Mitchell, supra*; *Doe A v. Diocese of Dallas*, 917 N.E.2d 475 (Ill. 2009); *Doe v. Crooks*, 613 S.E.2d 536 (S.C. 2005); *Wiley v. Roof*, 641 So. 2d 66 (Fla. 1994); *Givens v. Anchor Packing, Inc.*, 466 N.W.2d 771 (Neb. 1991).

At the beginning of the twentieth century, the Court reaffirmed this principle: "The legislature possesses no power to divest legal or equitable rights previously vested." *Beavers v. Myar*, 68 Ark. 333, 336, 58 S.W. 40, 41 (1900). A few years later in *Rhodes*, the Court confirmed that *Couch* stood for the proposition that "one could have a vested right in the defense of the statute of limitations, of which one could not be deprived by subsequent legislation." 112 Ark. at 14, 164 S.W. at 754. This was restated and reaffirmed in 1933 by the Court in *Wasson, supra*, and again in 1937 in *Coco v. Miller*, 193 Ark. 999, 1003, 104 S.W.2d 209, 211 (1937) ("The

8

Legislature has no power to divest legal or equitable rights previously vested."). As explained in *Coco*, to hold otherwise would be "to impair the obligation of contract or to deprive one of property without due process of law." *Id.*

Even the cases relied on by Plaintiffs affirm this sound constitutional principle. In *Forrest City Machine Works, Inc. v. Aderhold*, the Court discussed that the vested-rights concept is rooted in due process. 273 Ark. 33, 40, 616 S.W.2d 720, 724 (1981) ("The due process clauses are frequently held to prevent retroactive legislation from taking property belonging to one and giving it to another, without regard to any prior relations between the parties. To determine if one has a protected property right in the courts often look to see if a right has vested."); *see also Ark. Dept. of Human Servs. Div. of Econ. & Med. Servs. v. Walters*, 315 Ark. 204, 210, 866 S.W.2d 823, 825 (1993) ("We have indicated that it would violate due process to disturb vested rights or contractual rights."). While *Aderhold* did not involve a vested right, the Court explained that "a vested right exists when the law declares that one has a claim against another, or it declares that one may resist the enforcement of a claim by another." *Id.* at 41, 616 S.W.2d at 724. Clearly, a statute of limitations defense is a vested right that "declares that one may resist the enforcement of a claim by another."

Eleven years after *Aderhold*, the Court again reaffirmed the principle that "after a cause of action has become barred by the statute of limitations, the defendant has a vested right to rely on that statute as a defense, and neither a constitutional convention nor the legislature has power to divest that right and revive the cause of action." *Johnson*, 308 Ark. at 203-04, 823 S.W.2d at 885. The court confirmed this holding and reasoning in *Hall*, 356 Ark. at 614, 158 S.W.3d at 188. Most recently, last year, the court reiterated that even where a statute expressly provides that it is retroactive—as the Revival Act does here—the "court *must still ensure that applying the statute will not impair or disturb a contractual or vested right or create a new obligation.*" *Alpe v. Federal*

*Nat. Mort. Ass'n*, 2023 Ark 58, at 4, 662 S.W.3d 650, 653 (2023) (emphasis added). In fact, Plaintiffs can point to no instance where an Arkansas appellate court has recognized that the General Assembly possesses the power—even with weighty public policy concerns—to divest a person of a valid statute of limitations defense by reviving a time-barred action.

Instead of applying clear precedent, Plaintiffs argue that the vested-rights concept must bow to "equity and justice" when so dictated by public policy. However, none of the so-called "equity-and-justice-dictated-by-public-policy exception[s]" deal with statutes purporting to revive time-barred actions or divesting a party of a vested statute of limitations defense. For example, *Walters* dealt with the retroactive applicability of rules governing spendthrift trusts to prevent ineligible individuals from artificially impoverishing themselves to receive benefits to which they are not otherwise entitled and to facilitate recovery of improperly obtained benefits in order that the fiscal integrity of the Medicaid funds can be maintained. 315 Ark. 204, 866 S.W.2d 823 (1993). In other words, the case did not deal with a statute reviving a "dead" cause of action, but rather, governed the continued operation of an existing trust to safeguard the solvency of Medicaid by preventing an abuse of the system. This is a remarkably different scenario than what is presented here.

The public policy concerns that may justify retroactive application of some types of statutes are different than the analysis applicable to the revival of a time-barred action, and so, Plaintiffs' public policy concerns are largely irrelevant to the Court's analysis. Many of the same arguments could be made in favor of a statute reviving any time-barred cause of action, whether stemming from a motor vehicle accident, medical malpractice incident, or construction defect. The costs to society of caring for any injured individual could be substituted in nearly every policy argument presented by Plaintiffs. This will not suffice for legal analysis. As the Court noted in *Couch*, "[t]he impolicy of legislative changes of the laws is too well known and understood by members of the

legal profession to require comment. Great injury, vexatious and protracted litigation often result from an unwise alteration of existing laws, which have already received a judicial construction." 6 Ark. at 493.

Plaintiffs' public policy argument also wholly ignores the public policy in favor of statutes of limitations, which protect potential defendants from unfair legal action. *See McEntire v. Malloy*, 288 Ark. 582, 586, 707 S.W.2d 773, 776 (1986) (the purpose of a statute of limitations is to encourage the prompt filing of a claim so that a "defendant is protected from having to defend an action in which the truth-finding process would be impaired by the passage of time"). The passage of time often makes a robust defense of long-stale claims problematic at best and impossible at worst, as exemplified in the present case. the District Defendants face allegations dating back to the mid-1980s. Documents necessary for the District Defendants' defense may no longer exist, and potential exculpatory witnesses may have dimmed memories or are deceased, such as the named Defendant, Estate of BJ Chandler. It would be unjust to revive claims where the District Defendants' ability to defend themselves would be seriously hamstrung by the passage of so many decades.

      2. <u>This Court Cannot Abandon the Vested Rights Doctrine in Favor of Substantive Due Process.</u>

As to Plaintiffs' argument that the vested-rights analysis should be abandoned in favor of an amorphous substantive due process analysis, this argument too should be rejected. Plaintiffs seek to have this Court overrule precedent of the Arkansas Supreme Court. This Court, however, is bound by Arkansas Supreme Court decisions. *Engineered Sales*, 980 F.3d at 599. Plaintiffs' request for a change in Arkansas law must therefore be rejected. I

Moreover, even if this argument is considered, this argument should be rejected on fundamental principles of *stare decisis*. In *Chamberlain v. State Farm Mut. Auto. Ins. Co.*, the court explained as follows:

> Under the doctrine of *stare decisis*, we are bound to follow prior case law. The policy of *stare decisis* is designed to lend predictability and stability to the law. It is well-settled that precedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable. Our test is whether adherence to the rule would result in great injury or injustice.

343 Ark. 392, 397-98, 36 S.W.3d 281, 284 (2001) (internal citations omitted).

In *Southwest Arkansas Communications, Inc.*, the court considered the principle of *stare decisis* in the context of interpreting a constitutional provision and stated:

> A cardinal rule in dealing with constitutional provisions is that they should receive a consistent and uniform interpretation so that they shall not be taken to mean one thing at one time, and a different thing at another time. Certainly, when a constitutional provision or a statute has been construed, and that construction consistently followed for many years, such construction should not be changed.

296 Ark. 141, 145, 753 S.W.2d 267, 269 (1988) (citing *O'Daniel v. Brunswick Balke Collender Co.*, 195 Ark. 669, 674, 113 S.W.2d 717, 719 (1938)).

Here, as demonstrated above, the vested rights doctrine has deep roots in Arkansas case law, which is consistent with the original understanding of due process as a separation of powers limit on legislative authority. This vested rights limitation on legislative power can be traced through nearly 180 years of straightforward and consistent application by the Arkansas Supreme Court. These decisions have long articulated a clear and hard limitation on legislative power, which is a workable rule of law that sustains substantial reliance interests. These decisions are neither patently wrong nor manifestly unjust. As such, even if this Court could overrule Arkansas Supreme Court precedent, which it cannot, there is no compelling justification for abandoning the vested rights doctrine in favor of an ill-defined substantive due process analysis that would validate nearly any legislative encroachment.

Arkansas law is clear that the General Assembly cannot revive a time-barred action and thereby divest a defendant of a vested right in a statute of limitations defense. The Revival Act

aims to do just that, which is precisely why it runs afoul of vested rights protected by the Arkansas Constitution. As the Revival Act is unconstitutional as applied to a time-barred action, Plaintiffs' claims should be dismissed with prejudice as time-barred.

### D. Plaintiffs' Federal Claims Are Barred Regardless of the Revival Act.

Even assuming, *arguendo*, the Revival Act is effective, Plaintiffs' section 1983 and Title IX claims are nonetheless barred by the applicable statute of limitations. As Plaintiffs acknowledge, the United States Supreme Court has held that all section 1983 claims are governed by the state's general personal-injury statute of limitations, not by state statutes covering particular torts. *Wilson v. Garcia*, 471 U.S. 261, 280, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985); *Owens v. Okure*, 488 U.S. 235, 249-50, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989). *See also Ketchum v. West Memphis*, 974 F.2d 81, 82 (8th Cir. 1982). A Title IX claim is subject to the same limitations period that applies to a section 1983 claim. *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 618 (8th Cir. 1995).

Prior to *Wilson*, the lower courts, in borrowing state statutes of limitations for actions brought under 42 U.S.C. § 1983, focused on the nature of the particular claim at issue, a practice which "bred confusion and inconsistency in the lower courts and generated time-consuming litigation." *Owens*, 488 U.S. at 240. In *Wilson*, the Court sought to remedy the resulting "conflict, confusion, and uncertainty concerning the appropriate statute of limitations." 471 U.S. at 266. For purposes of determining the most analogous state statute of limitations, the Court rejected an approach which would "depend upon the particular facts or the precise legal theory of each claim," and under which "different statutes of limitations would be applied to the various § 1983 claims arising in the same State, and multiple periods of limitations would often apply to the same case." *Id.* at 274. Accordingly, the Court held that "[section] 1983 claims are best characterized as personal injury actions." *Id.* at 280. Due to the array of state statutes of limitations governing

particular personal-injury actions, however, the Court was forced to revisit the problem in *Owens*. The Court refined the approach adopted in *Wilson* by holding that "where a State has one or more statutes of limitations for certain enumerated intentional torts, and a residual statute for all other personal injury actions," the residual or general personal injury statute applies. *Owens*, 488 U.S. at 236.

Plaintiffs acknowledge this precedent but seek to avoid it by applying a claim-specific revival statute. When federal courts borrow a state statute of limitations under section 1983, the "limitation period is interrelated with provisions regarding tolling, revival, and questions of application." *DeVries v. Driesen*, 766 F.3d 922, 924 (8th Cir. 2014) (citing *Wilson*, 471 U.S. at 269 n.17). State tolling rules might include a statute tolling minors' claims until they reach a specified age. *See, e.g., Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 580 (9th Cir. 2012). There are limits, however: "It would no less frustrate 'the federal interest in uniformity and the interest in having firmly defined, easily applied rules' were [courts] to obediently apply the residual statute of limitations, only to then adopt a tort-specific tolling provision." *Id.* (quoting *Wilson*, 471 U.S. at 270); *see also DeVries v. Driesen*, 766 F.3d 922, 923-24 (applying Iowa's general personal-injury limitations period and refusing to apply a tolling rule from a "separate statutory scheme"); *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212-13 (10th Cir. 2014) ("Only generally applicable tolling provisions—such as those based on minority, incapacity, and equitable grounds—should be incorporated for use under § 1983."). Accordingly, only tolling or revival statutes of general applicability should be applied to section 1983 and Title IX claims.

Plaintiffs rely upon *Hardin v. Straub*, 490 U.S. 536, 540-44, 109 S. Ct. 1998, 104 L. Ed. 2d 582 (1989), in which the Court held that a section 1983 claim was tolled by the state's provision tolling the onset of limitations periods for prisoners and others suffering from legal disabilities, such as persons under the age of 18. The tolling provision in *Hardin*, however, applied to *all claims*

contained within the general statute of limitations for personal injury actions, such that there was no need to analyze the nature of the underlying claims. Consistent with *Hardin*, the District Defendants acknowledge Arkansas's general tolling provision, Ark. Code Ann. § 16-56-116(a), applies to Plaintiffs' claims. *Harris*, 658 F. Supp. at 439.

Plaintiffs, however, seek to apply the claim-specific Revival Act to Plaintiffs' section 1983 and Title IX claims. Any application of the Revival Act to these claims would conflict with the Supreme Court's holdings in *Wilson* and *Owens*. Plaintiffs attempt to characterize the Revival Act as one of general application because it does not identity a specific cause of action that it seeks to revive. However, the Revival Act only applies to "tortious conduct [that] caused the vulnerable victim to be a victim of sexual abuse." Ark. Code Ann. § 16-118-188(b). "Sexual abuse" is further defined under the Revival Act. Ark. Code Ann. § 16-118-188(a)(3). This is not a revival or tolling provision applicable to all claims within the general statute of limitations for personal injury actions. Applying the Revival Act to plaintiffs' claims would depend upon the particular facts of each claim and would lead to different statutes of limitations for various section 1983 and Title IX claims arising in Arkansas, which *Wilson* and *Owens* sought to avoid. The Court must, therefore, reject Plaintiffs' attempt to apply a sexual-abuse specific revival statute to their section 1983 and Title IX claims.

The court in *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101 (2d Cir. 2023), addressed this precise issue and held that a sexual abuse revival act did not apply to section 1983 claims. Consistent with Plaintiffs' other arguments, they attempt to make distinctions from the *Kane* decision but fail to provide any authority or compelling argument as to why those claimed distinctions are of consequence.

For example, Plaintiffs criticize the *Kane* decision because it does not "fully acknowledge and apply the rule of law set out in [*Bd. of Regents v.*] *Tomanio*, [446 U.S. 478, 488, 100 S. Ct.

15

1790, 64 L. Ed. 2d 440 (1989)], *Hardin* [*v. Straub*, 490 U.S. 536, 540-44, 109 S. Ct. 1998, 104 L. Ed. 2d 582 (1989)], and *Johnson* [*v. Ry. Express Agency, Inc.*, 421 U.S. 454, 463-64, 95 S. Ct. 1716, 44 L. Ed. 2d 295 (1975)]." Pls.' Resp. to Motions to Dismiss (ECF Doc. 27) at p. 27. Yet, the *Kane* decision specifically acknowledged that these cases hold that federal courts are obligated to apply a state's revival and tolling provisions. *Kane*, 80 F.4th at 109. But the court went on to correctly note that only revival and tolling provisions that are unrelated to any particular legal theory do not "frustrate *Wilson*'s desire to avoid time consuming litigation and uncertainty caused by 'an analysis of the particular facts' for each claim to determine the applicable statute of limitations." *Id.* (citing *Wilson*, 471 U.S. at 272). Thus, the *Kane* court fully addressed all applicable Supreme Court precedent, contrary to Plaintiffs' assertion.

Plaintiffs' focus on *Kane* also ignores the other cited authority in the *Kane* decision that supports the same conclusion. *See Varnell*, 756 F.3d at 1212-13 (holding that New Mexico's special statute for child sexual abuse did not toll plaintiff's Section 1983 and Title IX claims because it is not generally applicable); *Bonneau*, 666 F.3d at 580 (holding that Oregon's specialized abuse statute was not closely related to two-year residual statute of limitations, as required to borrow a tolling provision from state law for the plaintiff's section 1983 claim); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759-61 (5th Cir. 2015) (holding that the general statute of limitations applied to the plaintiff's Title IX and section 1983 claims rather than Texas's specific limitations period for sexual assault claims); *Woods v. Ill. Dep't of Child. and Fam. Servs.*, 710 F.3d 762, 765-68 (7th Cir. 2013) (declining to apply Illinois' child sexual abuse statute to revive the plaintiff's section 1983 claim).

While Plaintiffs criticize *Kane* and ignore other supporting authority, they notably fail to cite any authority that applies a sexual-abuse statute of limitations, tolling provision, or revival

statute to a section 1983 or Title IX claim.[3] The Supreme Court precedent of *Wilson* and *Owens* precludes any application of the Revival Act to Plaintiffs' federal claims. As a result, Plaintiffs' section 1983 and Title IX claims must be dismissed.

### E. There Is No Federal Statute of Limitations for Plaintiffs' Title IX Claims.

The same statute of limitations for Plaintiffs' section 1983 claims apply to their Title IX claims. *Egerdahl*, 72 F.3d at 618 ("Title IX should be subject to the same limitations period that applies to § 1983 and Title VI."). Because Congress did not provide a statute of limitations for Title IX, the "most closely analogous statute of limitations under state law" governs the federal cause of action. *Reed v. United Transp. Union*, 488 U.S. 319, 323, 109 S. Ct. 621, 625, 102 L. Ed. 2d 665 (1989). Federal courts routinely borrow the state statute of limitations applicable to personal injury actions, or the same state statute of limitations applicable to section 1983 actions, for Title IX claims. *See, e.g., Doe v. Howe Military Sch.*, 227 F.3d 981, 987 (7th Cir. 2000); *M.H.D. v. Westminster Schs.*, 172 F.3d 797, 803 (11th Cir. 1999); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 729 (6th Cir. 1996); *Egerdahl*, 72 F.3d at 618; *Bougher v. University of Pittsburgh*, 882 F.2d 74, 78 (3rd Cir. 1989).

Plaintiffs argue, without any supporting authority, that the Court should apply a federal statute of limitations for violations of certain federal criminal statutes found in 18 U.S.C. § 2255. As Plaintiffs note, in 2022 the formerly ten-year statute of limitations found in 18 U.S.C. § 2255

---

[3] Plaintiffs cite to *Curran v. City of Dearborn*, 957 F. Supp. 2d 877 (E.D. Mich. 2013), as a case where underlying facts needed to be considered to determine whether a tolling provision applied. Those underlying facts, however, addressed the plaintiff's disability for mental incapacity and the plaintiff's specific claims had no bearing on the analysis. Thus, *Curran* is unhelpful.

was eliminated. Pub. L. No. 117-176, 136 Stat. 2108 (2022).[4] Plaintiffs' argument that this federal statute of limitations should apply to Title IX claims was raised and rejected in *Greene v. Woodlawn Unit Sch. Dist. #209*, No. 22-cv-2727, 2023 U.S. Dist. LEXIS 170807, at *9 (S.D. Ill. Sept. 25, 2023), wherein the court noted the plaintiff "cite[d] to no authority (nor [was] the Court aware of any authority) suggesting that the statute of limitations contained in the 18 U.S.C. § 2255 has any impact on the statute of limitations applicable to Title IX claims." In *Greene*, the court relied upon existing precedent to apply the Illinois personal injury statute of limitations to the plaintiff's Title IX claim. *Id.* at *16.

The same result is required in this case. The Court should apply existing Supreme Court and Eighth Circuit precedent and hold the applicable statute of limitations for Plaintiffs' Title IX claims is the same as their section 1983 claims. Both claims are time-barred under the applicable statute of limitations and should be dismissed with prejudice.

### III.   CONCLUSION.

For the reasons stated herein, and in the Motion to Dismiss and Brief in Support, Separate Defendants Dardanelle School District; Rolando Valls, in his official capacity; Diane Thomas, in her individual and official capacities; and Mark Gotcher, in his official capacity, respectfully request that all claims made against them in Plaintiffs' Amended Complaint be dismissed with prejudice.

---

[4]  Even if 18 U.S.C. § 2255 applied, which the District Defendants deny, it cannot serve to revive Plaintiffs' Title IX claims that had long been time-barred. *See Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 950, 117 S. Ct. 1871, 138 L. Ed. 2d 135 (1997) ("[E]xtending a statute of limitations after the pre-existing period of limitations has expired impermissibly revives a moribund cause of action.").

Respectfully submitted,

Jay Bequette, Ark. Bar #87012
Cody Kees, Ark. Bar #2012118
Phillip M. Brick, Jr., Ark. Bar #2009116
BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax:    (501) 374-5092
Email: jbequette@bbpalaw.com
Email: ckees@bbpalaw.com
Email: pbrick@bbpalaw.com

*Attorneys for Separate Defendants
Dardanelle School District; Rolando Valls,
in his official capacity; Diane Thomas, in
her individual and official capacities; and
Mark Gotcher, in his official capacity*